**COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK and Continental Casualty Company, Plaintiffs,**

**General Accident, Fire & Life Assurance Corporation, Ltd., Intervening Plaintiff,**

v.

**Clara ADAMS et al., Defendants.**

**No. IP 63–C–656.**

United States District Court
S. D. Indiana,
Indianapolis Division.

July 2, 1964.

Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for plaintiffs.

Bingham, Summers & Spilman, Indianapolis, Ind., for intervening plaintiff.

Bontrager & Spahn, Elkhart, Ind., for assured defendants.

Hollowell, Hamill & Price, Lewis, Weiland, Payne & Carvey, Townsend & Townsend, Young & Young, Indianapolis, Ind., Soshnick & Brenton, Shelbyville, Ind., Cook, Cook, Bayliff & Mahoney, Kokomo, Ind., for claimants.

DILLIN, District Judge.

On October 31, 1963 more than seventy persons were killed and some three hundred or more injured, many severely, in an explosion occurring in a building at the Indiana State Fair Grounds in Indianapolis. It has been charged by the Grand Jury of Marion County, and others, that the explosive substance was propane gas, used and stored on the premises in cylinders in violation of Indiana law.

This action in interpleader was commenced by Commercial Union Insurance Company of New York (Commercial) and by Continental Casualty Company (Continental), the primary and excess insurance carriers, respectively, for certain persons, firms and corporations against whom, among others, legal liability for the catastrophe is asserted. The assured and several hundred potential claimants were joined as parties defendant. Thereafter, General Accident, Fire and Life Assurance Corporation, Ltd. (General), was granted leave to intervene as an additional party plaintiff, and its assureds, additional parties against whom legal liability is asserted, were added as additional parties defendant. Unless otherwise indicated, the designation "plaintiffs" will hereafter include Commercial, Continental, and General.

Commercial and Continental are incorporated in New York and Illinois, respectively, with principal place of business in their respective states of incorporation. Their various assureds are as follows: Discount Gas Corporation, Biggs Bottle Gas, Franger Gas Company, Inc., W. W. Stateline Trailer Sales & Park, Foster Bottle Gas & Appliances, Christner's Feed Store, Baker's Bottle Gas, and Hiller L. P. C. Gas Co., all alleged to be Indiana corporations; Van Wert Propane and Davis Gas Service,

both alleged to be Ohio corporations [1]; Edwin Hoehn Ali-Gas Co.[2], Douglas Gas & Oil Co., and Kleen Flame Bottle Gas, all alleged to be Michigan corporations; Clifford Blair [3], a citizen of Ohio, and Edward Franger, James Bergeron, Esther Franger, Robert Oliver, and John C. Demas, all Indiana citizens. Each of such corporations is alleged to have its principal place of business in its state of incorporation.

General is incorporated under the laws of Great Britain, and is authorized to do business in various states of the United States, with its principal place of business in Pennsylvania. Its assured are Du-Ray, Inc., incorporated and having its principal place of business in Indiana, and Fred G. Helms, Boyd Pedigo, and Charles Seegers, all Indiana citizens.

Unless otherwise indicated, the word "assured" will refer to all of the above named defendants assured under all policies.

The remaining defendants, being the injured and the personal representatives of the deceased (hereinafter called "claimants") are individual citizens of Indiana, save that Lafayette Kasserman is a citizen of Illinois, Milo Marshall of California, Anna Steuber of New Jersey, and Stender Steen of the Country of Denmark.

Commercial's policy 131 LC 250050 provides for comprehensive general liability coverage with bodily injury liability (except automobile) of $100,000 for each person and $300,000 for each occurrence, with aggregate products hazard coverage of $300,000. Continental's policy RDX 969 2309 is excess to the Commercial policy; it provides coverage to the same assureds for bodily injury liability (except automobile) in an amount necessary to bring the total coverage to $1,000,000 per occurrence, with aggregate products hazard coverage of $700,000. General's policy CG 412815 provides for comprehensive personal liability coverage with limits for bodily injury liability (except automobile) of $10,000 for each person and $20,000 for each occurrence, with aggregate products hazard coverage of $20,000.

Each of the plaintiffs has filed its bond in the full amount of the respective policy limits above set out, i. e., $300,000 as to Commercial, $700,000 as to Continental, and $20,000 as to General. Each prays that the court enter an order of interpleader determining that the defendants (other than the assured) are adverse claimants to the benefits of such funds, that they be required to interplead and establish their respective claims, and that the court adjudicate and decree that plaintiffs have, by relinquishing all claim to the funds created by the insurance coverage, fully discharged their obligations growing out of the bodily injury liability (except automobile) coverage of their respective policies, including the obligation to defend any lawsuit against said assureds whether growing out of the occurrence of October 31, 1963 or otherwise.

Jurisdiction is alleged under the interpleader act, 28 U.S.C. § 1335, and, alternatively, under 28 U.S.C. § 1332.

Plaintiffs filed their motion pursuant to Rule 56, F.R.C.P., for a summary order and judgment of interpleader, and for judgment determining their rights and obligations under said policies of insurance, filing with said motion certain affidavits in support thereof. A proposed order and judgment is made a part of the motion. On April 13, 1964 the court ordered all parties to show cause in writing to be filed with the clerk on or before May 8, 1964 why such motion should not

1. Van Wert Propane, Inc. an Ohio corporation, Davis Gas Service, by Kenneth C. Davis, "its owner," and Clifford Blair have filed disclaimers as to any interest in the $1,000,000 fund hereafter mentioned. They have not disclaimed as to coverage under the policies generally.

2. Edward Hoehn, doing business as Edw. Hoehn Ali-Gas Co. (stated by him to be the correct name of the defendant styled Edwin Hoehn Ali-Gas Co.) disclaims any interest in the insurance coverage of plaintiffs' policies, and the action has been dismissed as to him.

3. See Footnote 1, supra.

be granted and such proposed order and judgment entered, and assigned hearing on such objections, if any, for May 15, 1964. Hearing was duly had on such date, and post-hearing briefs have been filed and considered.

Various motions and objections to the proposed order and judgment, and to the action generally, were timely filed. None of the defendants filed any response supported by affidavit or other testimony given under oath as required by Rule 56(e). Therefore, all facts stated in the affidavits filed by plaintiffs are undisputed, and are found to be true, as are statements of fact, wherever appearing in this opinion.

As of May 15, 1964, the date of hearing, 129 lawsuits arising out of the explosion had already been filed against Discount Gas Corporation, one of the assureds under the Commercial and Continental policies. The total of the prayers of such suits exceeds $11,107,500.00. The court expressly finds that the fair settlement value of such claims exceeds $1,000,000. As of April 10, 1964, 14 such suits had been filed against Du-Ray, Inc., one of the assureds under the General policy. The total of the prayers of such suits equals $2,209,860. The court further finds that the fair settlement value of such claims exceeds $20,000. The claimants are citizens of different states, including Indiana.

## JURISDICTION

The language of Title 28 U.S.C. § 1335 seems to us to be quite clear. As applied to this case, it simply says that if a corporation has issued a policy of insurance of a value of at least $500, and two or more adverse claimants of diverse citizenship may claim to be entitled to one or more of its benefits, interpleader may be had as a matter of right upon payment of the amount due to the registry of the court, there to abide the judgment of the court, or upon the stakeholder giving bond to the same effect.

 It is true that virtually all of the claimants are citizens of the same state—Indiana. No matter. The statute does not require each claimant to be a citizen of a different state, and it is sufficient if the citizenship of more than one state is represented among the defendants. Holcomb v. Aetna Life Insurance Company, 10 Cir., 1958, 255 F.2d 577, cert. den., Fleming v. Aetna Life Insurance Company, 1958, 358 U.S. 879, 79 S.Ct. 118, 3 L. Ed.2d 110; Haynes v. Felder, 5 Cir., 1957, 239 F.2d 868; Blair Holdings Corp. v. Bay City Bank & Trust Co., 9 Cir., 1956, 234 F.2d 513.

It is also true that there is identity of citizenship between Continental, one of the plaintiffs, and the claimant Kasserman. This is likewise immaterial, as it is settled that under statutory interpleader (as distinguished from interpleader under Rule 22(1), F.R.C.P.) the stakeholder and one or more claimants may be citizens of the same state. Treines v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85.

 Finally, it has been urged that the action is not proper because the claimants do not have claims adverse to each other. It might, by the same reasoning, be said that 100 persons adrift in the ocean with but one small lifeboat in sight, were not adverse to each other. We fear, however, that the concept of non-adversity would dwindle in direct proportion to the number of swimmers reaching the boat. (Cf. U. S. Holmes, 1842, 26 Fed. Cas. p. 360, 15,383).

In a situation where the aggregate of the claims is far in excess of the liability of the insurer, each claimant is interested in reducing or defeating the claim of every other claimant, and the adversity of claim required by statute is satisfied. Standard Surety & Casualty Co. v. Baker, 8 Cir., 1959, 105 F.2d 578; Dugas v. American Surety Co., 1937, 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720.

 Further, interpleader may be resorted to by an insurance carrier when the adverse claims are unliquidated tort claims against its assured. Standard Surety & Casualty Co. v. Baker, supra; Pan American Fire & Casualty Company v. Revere, E.D.La., 1960, 188 F.Supp. 474.

We hold that all of the conditions of statutory interpleader are clearly met in this action, hence jurisdiction is found to exist and the claimants will be directed to interplead and make proof of their respective claims. Since jurisdiction under 28 U.S.C. § 1335 is found to exist, it is unnecessary to examine plaintiffs' alternate ground.

All motions to dismiss and all objections to the proposed order and judgment of the court predicated upon lack of jurisdiction or failure to state a cause upon which relief may be granted are hereby overruled.

## MISJOINDER

Some of the assured of Commercial and Continental, Franger Gas Company, Inc., Edward Franger, James Bergeron, Robert Oliver and John C. Demas, (The "Franger Group") and Discount Gas Corporation ("Discount") have filed motions to drop from the original complaint all the parties defendant other than the assured, or, alternatively, to drop all of the assured as parties defendant. Their theory is that to the extent that the complaint seeks to determine contractual rights and duties under policies of insurance it is, in effect, a suit for a declaratory judgment and is misjoined with an action in the nature of interpleader.

Neither movants nor plaintiffs have seen fit to brief the motions, so they will be disposed of summarily pursuant to local rule 7.[4]

The motion is improper, since it would impose upon the court a non-judicial burden. The determination as to whether causes of action or parties are misjoined is a proper judicial function. However, the motions would have the court not only to make such a determination, but also (if a misjoinder was found to exist) to determine which cause and which defendants to keep and which to

drop. This election surely belongs to the plaintiffs, whose cause of action it is.

The proper remedy would have been a motion to sever, pursuant to Rule 21, F. R.C.P. The time for filing such a motion has passed. Since complete diversity exists between plaintiffs and assured, a separate declaratory judgment action could have been maintained had such a motion been filed and granted, so we see no prejudice to the named defendants in overruling their present motions, as we now do, for the reason stated.

## CONTRACTUAL OBLIGATIONS OF THE PLAINTIFFS

We now arrive at what appears to us to be the only serious controversy presented by plaintiffs' motion for summary judgment—the determination of certain of the contractual rights and duties of plaintiffs under their respective policies.

The Franger Group, Discount, and the Du-Ray Group resist plaintiffs' prayer for a determination that plaintiffs will have fully discharged their respective contractual obligations under the bodily injury liability (except automobile) coverage of their respective policies by payment into the registry of the court of their full policy limits. In particular, they insist that plaintiffs have a contractual duty to defend and to pay costs, as a distinct and separate obligation of the policies not dischargeable other than by performance.

None but a very few of the claimants are opposed to interpleader. However, Nancy Joanne Book and 198 other claimants (Book claimants) also object to an adjudication relieving plaintiffs of their duty to defend and to pay costs. They take the pragmatic point of view that they, as a group, expect to recover judgments against certain of the assured in excess of policy limits, and they desire that the assured be spared the expenses

4. Rule 7 of this court provides, in part, as follows:

"Motions.—(a) Whenever a motion is made in any case, except a motion during the trial, the moving party shall serve and file with the motion a separate supporting brief. An adverse party shall have 15 days in which to serve and file an answer brief, * * *. Failure to file an answer brief * * * within the time prescribed shall subject a motion to summary ruling."

mentioned in order to subject the savings to execution.

Their standing to be heard on a matter regarding the construction of contracts to which they were not parties, as to clauses not inserted in the contracts for their benefit, is conjectural, to say the least. However, we need not stray into this by-road since the questions have been fully presented by the assured.

The policies issued by Commercial and General phrase the obligation to defend in identical terms, to-wit:

"II. Defense, Settlement, Supplementary Payments:

"With respect to such insurance as is afforded by this policy, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"(b) (1) * * *.

"(2) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon; * * *."

The policy issued by Continental contains a substantially different clause relative to the defense of actions against the named insured as follows:

"CONDITIONS

"1. * * *

"2. Notice of any accident, which appears likely to involve this policy, shall be given to the Company, which at its own option, may, but is not required to participate in the invest-igation, settlement or defense of any claim or suit. In the event expenses and/or costs in connection with any claim or suit is incurred jointly by mutual consent of the Company and of the Insured or Primary Insurer, the Company, in addition to its limits of liability as expressed in Item 6, Section 1 of the Declarations, shall be liable for no greater proportion of such expenses and/or costs than the amount payable by the Company under this Policy bears to the total loss payment. * * *"

It is obvious that Continental has no duty to defend nor to pay costs, but only the right to do so at its own election. It has not elected to do so. It therefore follows as a matter of law that judgment acquitting it of such responsibilities is proper, and will be entered accordingly.

A closer question is presented with respect to Commercial and General, and their assured are not without authority in support of their position. In American Casualty Co. of Reading, Pa. v. Howard, 4 Cir., 1951, 187 F.2d 322, the insurance company sought a declaratory judgment seeking relief from any further liability or duty to defend under a policy of insurance issued to the defendant. It had exhausted its bodily injury coverage in paying a first judgment rendered against its assured, and a second suit seeking damages, in part for bodily injuries, had been filed. The policy clause entitled "Defense, Settlement, Supplementary Payments" was for all practical purposes identical to that above quoted from the Commercial and General policies.

That part of the judgment of the District Judge holding that the insurer's duty to defend is entirely independent of the obligation to pay for bodily injury and property damage was affirmed on the appeal. The Court of Appeals adopted the reasoning of the District Judge, which was predicated on the lone dissent of Branch, J., in Lumbermen's Mut. Cas. Co. v. McCarthy, 1939, 90 N.H. 320, 8 A.2d 750, 126 A.L.R. 894.

On the other hand, the majority in McCarthy held, with regard to a similar insurance policy after the policy limits had been paid on a first judgment, that the insurer had no further duty to defend. It reasoned that, construing the policy as a whole, the clause relating to defense was for the protection of the insurer as a natural concomitant of the insurer's duty to pay the insured's liability, but was not independent of that duty. Upon performance in full of the duty to pay up to policy limits, the court continued, the duty to defend ceases to exist and the further defense of any action pending thereafter must be conducted and may be controlled by the insured.

Discount and the Franger Group also rely upon American F. & C. Co. v. Pennsylvania T. & F. M. Cas. Ins. Co., 5 Cir., 1960, 280 F.2d 453, in which the court held an insurer liable for the defense of its original assured in a situation where the original insurer claimed that its policy had actually become excess because of the lease of the assured's truck to another whose own insurance, it was contended, had become primary. In that situation the duty to defend clause was construed to be a separate and distinct insuring agreement; however, the factual situation was quite different from that in our own case, and no exhaustion of policy limits was involved.

In an area of the law where authority is scant, we prefer the reasoning of our own Court of Appeals in Denham v. La-Salle-Madison Hotel Co., 7 Cir., 1948, 168 F.2d 576, 585, which construes the clause "It is further agreed that as respects insurance afforded by this policy, (the insurer) shall: " to be a limiting clause, and that when no further insurance is afforded, the obligation to defend is likewise terminated. Cf. Oda v. Highway Insurance Company, 1963, 44 Ill.App.2d 235, 194 N.E.2d 489, 500.

█ We therefore conclude, as a matter of law, that the duty of Commercial and General to defend suits brought against their respective assureds, and to pay costs taxed against such assureds, should terminate as of the date herein-' after mentioned, with respect to any and all actions now or hereafter filed against their assured, including this action, arising out of claims for personal injuries (other than automobile) as defined in the policies. Costs incurred to such date will of course remain the obligation of plaintiffs.

NATURE OF THE "SETTLEMENT"

The Franger Group, Discount, the Book claimants and the claimant Robert Groover each object to the proposed order and judgment tendered by plaintiffs, and to the bonds posted by them, respectively, on the ground that the same are conditional, and do not require plaintiffs to part with their funds unless the court finds in their favor on their demand to be relieved from the contractual obligations heretofore mentioned. They argue further that plaintiffs are not relinquishing all claims to the funds, but only "to the extent needed to satisfy the claims of the defendants as against the assureds," not more than policy limits, which could conceivably be less than policy limits. It is conceded that inconsistencies appear in the complaint, intervening complaint, and the respective bonds applicable thereto. We now resolve them.

Obviously, an offer to pay $1,020,000 if so much can be proved is not the same as an offer to pay $1,020,000 certain. Neither is the "to the extent needed" language of paragraph 22 of the complaint and paragraph 18 of the intervening complaint consistent with other paragraphs suggesting an unconditional tender, particularly since the plaintiffs' affidavits in support of their joint motion for summary judgment induce us to find, as we have found, that the fair *settlement* value of the claims is in excess of policy limits.

Construing the plaintiffs' pleadings, including their bonds, as a whole, we find that it is their intent to invoke the setlement provisions of their respective policies to settle all pending and future claims against their assured arising out of the bodily liability (except automobile) coverages for their respective policy limits. All that we have previously held in

this opinion, and particularly that part releasing plaintiffs of the duty to defend and to pay certain costs, has been predicated on such construction.

■ It would have been possible, in this action, for plaintiffs to have paid their policy limits into court (or posted an appropriate bond), interpled the claimants, and to then have resisted liability in the hope of regaining the fund. This would have denominated the action as one in the nature of interpleader, rather than strict interpleader, and would have subjected plaintiffs to the duty of defense and payment of costs. Cf. Pan American Fire & Casualty Company v. Revere, supra.

■ But they have consistently maintained that they do not desire to defend, but rather wish to be relieved of that responsibility. So be it. According to this construction, which we have adopted, they must relinquish all interest in the stake.

It will therefore be ordered and adjudged that Commercial, Continental, and General pay into the registry of the Court the sums of $300,000, $700,000 and $20,000, respectively, within ten days from the date hereof, whereupon their respective bonds will be deemed superceded and released. It will further be adjudged that their respective duties to defend and to pay costs in all pending and future actions against their assured, including this action, will terminate forthwith upon such payment. Such payments will be unconditional, save that such funds and any interest earned thereon, will be returned in the event that the judgment of this court ordering interpleader is finally reversed on appeal.

### POSSIBLE TORT LIABILITY OF PLAINTIFFS

The Franger Group, Discount, the Du-Ray Group, the Book claimants, and the claimant Robert Groover have each filed further objections to the form of the proposed order and judgment tendered by plaintiffs, contending that the same would relieve plaintiffs of possible liability in tort or quasi in tort if such liability be found to exist against them or any of them.

■ We do not find the proposed order and judgment open to this construction. The release of possible tort liability is beyond the scope of the motion for summary judgment. The order and judgment to be entered by the court will, however, specifically preserve the right of any defendant with a tort claim against plaintiffs, or any of them, (as distinguished from a tort claim against plaintiffs' assured) to assert the same in an appropriate action.

### INJUNCTION

■ Two of the prime purposes of the interpleader statute are to avoid multiplicity of actions, and to avoid an inequitable division of a common fund when the fund is insufficient to pay all of the claims against it. Both prospective situations have arisen out of the Coliseum disaster, and both may be minimized in this interpleader proceeding.

In order to insure the most equitable division of the fund herein referred to, it is essential that the claims be determined by the same trier of facts, whether court or jury, in order to minimize the disparity which would otherwise inevitably result. Unfortunately, however, Rule 1–4A of the Supreme Court of Indiana, permitting consolidation of cases, has application only to cases pending before a particular court.

It is apparent that any case tried in any court against any of plaintiffs' assured, which resulted in a judgment against any of them, would affect the property involved in the interpleader action because it would fix the amount of such claimant's damages to be considered in apportioning the interpled funds. Montgomery Ward & Co. v. Fidelity & Deposit Co., 7 Cir., 1947, 162 F.2d 264. To the extent that other claims against the same assured were not reduced to judgment by the same trier of facts, the disparity above mentioned would exist.

■ Therefore, in order to relieve the assured from the burden of defending

a multiplicity of actions over a period of many years, and more especially to make it possible to distribute the fund created by plaintiffs in an equitable manner, the court will enter an order restraining all claimants from instituting or prosecuting any proceeding in any state or United States court affecting the property involved in this interpleader action, and specifically against instituting or prosecuting any such proceeding against any of the defendants herein designated as the assured, until the further order of the court, all pursuant to Title 28 U.S.C. § 2361 and § 2283.

### FUTURE PROCEEDINGS

■ This court has no power to prevent any claimant from continuing to assert a claim against any or all of the assured, in an effort to secure a judgment which would enable him to reach the personal funds of the assured. Such is not intended by the restraining order to be issued. However, no such claim may be asserted or prosecuted other than in this action, so long as such order remains in effect.

All claimants will be ordered and directed to interplead within 90 days from the date hereof. As to those who do not desire to attempt to procure a personal judgment against the assured, or any of them, the burden of such claimants will be limited to alleging and proving personal injury or wrongful death damages proximately caused by the explosion of October 31, 1963. Service of claims on other claimants will be unnecessary. As to those who desire to attempt to procure such a judgment, it will further be necessary to allege and prove the legal liability of the defendant-assured, and to serve him or them with copies of all pleadings, as provided by the rules.

### INVESTMENT OF FUNDS

Pursuant to the judgment to be entered relieving plaintiffs from further costs herein, it is apparent that future costs of this proceeding will necessarily be paid out of the fund, save as they may be attributable to proceedings to procure personal judgments.

■ In order to offset this drain on the fund, and having in mind the fact that it will take some time to determine all of the anticipated claims, the clerk is ordered to invest the same in securities of the United States Government or to deposit the same in an interest bearing account or accounts, to the approval of the court, and as the court may from time to time direct.

Any and all motions or objections in conflict with any of the foregoing are each overruled.

The Clerk will prepare an order and judgment in conformity herewith.