NATIONAL UNION INSURANCE COMPANY OF WASHINGTON, D. C., a corporation, Appellant,

v.

PHOENIX ASSURANCE COMPANY OF NEW YORK, a corporation, Appellee.

No. 6607.

District of Columbia Court of Appeals,

Argued Nov. 7, 1972.

Decided March 6, 1973.

---

NEBEKER, Associate Judge:

This appeal from an order of dismissal presents the question whether a primary insurance carrier must pay the costs of the defense of a claim expended by an excess insurance carrier after the primary carrier has paid its total possible liability under its policy. Counsel for the primary carrier deposited that amount with the clerk of the court and withdrew, leaving the excess carrier to defend the action. After considering the arguments of the excess carrier (the appellant), we find no error and affirm.

Phoenix Assurance Company of New York (Phoenix) issued a comprehensive general liability insurance policy to George Basiliko, an owner of rental real estate. The policy provided primary bodily injury liability of $10,000 for each person injured. National Union Insurance Company of Washington, D.C. (National Union) issued excess liability insurance to George Basiliko providing excess insurance of $100,000 for each person injured. As a result of an accident on Mr. Basiliko's property, a suit was brought in the United States District Court for the District of Columbia seeking damages against Mr. Basiliko for personal injuries. Phoenix engaged attorneys who initiated the defense of the claim. When it became evident to Phoenix that the actual damages would exceed the primary policy coverage, a formal offer of judgment was made to the claimant. When this offer was rejected, Phoenix moved for leave to deposit the $10,000 maximum liability afforded by the primary policy into the registry of the District Court and to permit counsel to withdraw. Upon the granting of this relief, National Union engaged attorneys to assume the defense of the action. National Union provided representation throughout the trial,[1] a subsequent appeal, and a separate indemnity suit brought by a codefendant in the tort

Wade J. Gallagher, Washington, D. C., for appellant.

Thomas H. McGrail, Washington, D. C., for appellee.

Before GALLAGHER, NEBEKER and HARRIS, Associate Judges.

---

1. The verdict was for $26,000.

action.[2] This action was commenced by National Union seeking reimbursement from Phoenix for its expenses in defending the claim. After trial, the claim was dismissed for failure to state a claim upon which relief may be granted.

■ There is sharp conflict among the jurisdictions as to whether an insurer under a liability policy is relieved of its obligation to defend after it has made payment to the full extent of its liability under the policy.[3] After considering the conflicting views, we are persuaded by the logic of Lumbermen's Mutual Casualty Co. v. McCarthy, 90 N.H. 320, 8 A.2d 750 (1939). In that case, which involved a single insurer and a liability in excess of the policy limit, the court determined that the primary obligation imposed on the insurer was to pay the insured's legal liability for damages in certain specified situations. All other provisions of the policy were dependent upon and designed to implement that primary obligation. The court stated:

> Certainly the provisions of the policy with respect to the settlement or defense of actions against the insured are such as one would naturally expect to find in an agreement of this kind because they are essential to the protection of the insurer from false or exorbitant claims. They are natural concomitants of the insurer's duty to pay the insured's liability but to construe them as independent of that duty to pay would result, in view of the provisions of the policy which give the insurer full control over the settlement of claims and the conduct of litigation, in placing the duty of defense upon the shoulders of one not obligated to

pay, and in removing control over settlement and litigation from the hands of the insured who, in the event of a verdict and final judgment against him, would have to pay damages. We cannot assume, in the absence of express words, that such a result was in the contemplation of the parties to the contract of insurance.[4]

*Cf.* Liberty Mutual Insurance Co. v. Mead Corp., 219 Ga. 6, 131 S.E.2d 534 (1963). The soundness of this approach is illustrated in the factual situation involved in Commercial Union Insurance Co. v. Adams, 231 F.Supp. 860 (S.D.Ind.1964). In that case, claims arose out of an explosion at the Indiana State Fair Grounds which resulted in death or injury to hundreds of people. The court, following the approach taken in *Lumbermen's Mutual,* held that the duty of two comprehensive liability insurers to defend all pending and future suits against their respective insured terminated upon their payment into the registry of the court of the limits of their liabilities under the policies.

The Phoenix policy provided:

> *With respect to such insurance as is afforded by this policy,* the company shall:
>
> (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

---

2. Phoenix expended $1,712.50 prior to its withdrawal from the action. National Union expended $5,014.85 in its defense of the insured ($3,987.22 for the tort trial and $1,027.63 for the appeal and the indemnity suit). The insured incurred no defense costs personally.

3. *See generally* Annot., 27 A.L.R.3d 1057 (1969); 7A Appleman on Insurance, § 4691 (1962).

4. Lumbermen's Mutual Casualty Co. v. McCarthy, 90 N.H. 320, 322, 8 A.2d 750, 752 (1939). The court was careful to point out, however, that the insurer may not initially pay the policy limit and place the full burden on the insured from the beginning or abandon its defense of an insured in the middle of a proceeding under circumstances prejudicial to the insured.

(b)(1) . . .

(2) *pay all expenses incurred by the company*, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment *until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon*; . . . [Emphasis supplied.]

By its terms, the contract provision for defense of claims is "[w]ith respect to such insurance as is afforded by this policy". The policy does not provide for defense against a claim when the carrier concedes liability to the policy limit. The contract also specifically provides that the company must pay all expenses until the company has deposited such part of the judgment as does not exceed the limit of the company's liability. With the depositing of an amount equal to the policy limits, and having investigated and defended the cause of action in good faith to that point, the responsibility of Phoenix terminated. *See also* General Casualty Co. v. Whipple, 328 F.2d 353 (7th Cir. 1964); Denham v. LaSalle-Madison Hotel Co., 168 F.2d 576 (7th Cir.), cert. denied, 335 U.S. 871, 69 S.Ct. 167, 93 L.Ed. 415 (1948); Commercial Union Insurance Co. v. Adams, *supra*, (involving an insurance contract with nearly identical wording). Contra, American Casualty Co. v. Howard, 187 F.2d 322 (4th Cir. 1951); Anchor Casualty Co. v. McCaleb, 178 F.2d 322 (5th Cir. 1949). The insured, Mr. Basiliko, therefore, had no contractual right against Phoenix for a continuing defense once it paid the $10,000 policy limit into the court registry. Moreover, since the insured incurred no expense after the withdrawal of Phoenix, he had no claim against it.

The holding of *Lumbermen's Mutual* is, a fortiori, applicable in the situation where an excess carrier is involved. By the terms of National Union's contract, it was bound to share in the costs of the defense where a claim exceeded the primary insurance. The contract provided:

1. *Payment of Costs.* Costs incurred by the insured personally, with the written consent of the Company, and for which the insured is not covered by the said Primary Insurers, shall be apportioned as follows:

\* \* \* \* \* \*

(c) Should, however, the sum for which the said claim or claims may be so adjustable exceed the Primary Limit or Limits, then the Company, if they consent to the proceedings continuing, shall contribute to the "Costs" incurred by the Insured in the ratio that their proportion of the ultimate net loss as finally adjusted bears to the whole amount of such ultimate net loss.

\* \* \* \* \* \*

Here, National Union's assumption of the defense showed its consent to the proceedings as well as its understanding of its obligation to the insured. The excess carrier cannot now be placed in a better position than the insured, particularly where it has a contractual duty to share the defense costs. *Cf.* Firemen's Fund Insurance Co. v. North Carolina Farm Bureau Mutual Insurance Co., 269 N.C. 358, 152 S.E.2d 513 (1967); Western Pacific Insurance Co. v. Farmers Insurance Exchange, 69 Wash.2d 11, 416 P.2d 468 (1966).

Even assuming, arguendo, that the insured had a cause of action against Phoenix, this action by National Union was precluded. No contractual obligation existed to make one insurer accountable to the other for breach of its independent obligation to the insured. American Surety Co. v. State Farm Mutual Auto Insurance Co., 274 Minn. 81, 142 N.W.2d 304 (1966). Nor is subrogation justified where each of the companies had a separate and distinct

obligation to pay defense costs.[5]  *Cf.* Iowa National Mutual Insurance Co. v. Universal Underwriters Insurance Co., 276 Minn. 362, 150 N.W.2d 233 (1967).

Finding no error, the dismissal is

Affirmed.

---

5. Since we sustain the trial court's dismissal of the suit for failure to state a claim upon which relief may be granted, it is unnecessary to consider appellant's contention that the trial court erred in failing

to admit appellant's expert witnesses' opinion evidence.