The sole issue in this case is whether an insurer is relieved of its obligation to defend its insured by paying the policy limits into court.
To answer this question, we must first look at the language of the insurance contract itself and determine what the parties intended. After reviewing the subject policy provisions, and after reviewing the facts, we are convinced that the insurer was under a duty to defend its insured; therefore, the declaratory judgment of the trial court which held that the insurer owed no duty to defend its insured is due to be reversed.
The facts preceding the insurer's request for declaratory relief are as follows:
On May 21, 1983, Nina Hatter was injured when the car she was driving collided with a car driven by Guy Allen Samply, Jr. Her minor daughter, Michelle Hatter, was also injured. On October 20, 1983, Nina Hatter brought suit against Samply for her personal injuries. Her husband, Robert Hatter, also sued and sought damages for loss of consortium and for the medical expenses of his wife and child. No action was brought on behalf of the minor, Michelle Hatter.
Samply's insurer, Integrity, retained counsel to represent Samply in the Hatters' suits. The case was tried, but resulted in a mistrial.
A new trial date was set, but before the case was tried, Integrity brought this declaratory judgment action, naming Samply, the Hatters, and the Hatters' daughter as defendants, and sought to have the limits of its coverage established at $10,000, and also sought to be discharged from the suit upon payment into court of that amount. Integrity sought a declaration of its rights under the contract, specifically a clause in its policy which provided that its coverage was limited to $10,000 per injured person and $20,000 per accident. Integrity relied heavily upon a provision of the policy which provided, in pertinent part, as follows:
 "We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.
"* * *
 "The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:
"1. Covered persons; *Page 81 
"2. Claims made;
 "3. Vehicles or premiums shown in the Declarations; or
"4. Vehicles involved in the auto accident.
 "We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability." (Emphasis added.)
The trial court held that Integrity's coverage of the accident in question was limited to $10,000, and, that, upon tender of that sum to the clerk of the court, Integrity would be relieved of further defense of Samply. Integrity paid the $10,000 into court and was discharged. Samply and the Hatters appeal here, raising the following issues: whether the trial court erred in holding (1) that the applicable policy limit is $10,000; and (2) that upon payment into court of $10,000, Integrity's duty to defend Samply ended.
During oral argument, counsel for Samply conceded that the amount of the policy limit is no longer an issue; therefore, the sole issue before this Court is whether, under the provisions of its policy with Samply, Integrity could tender its policy limits and discontinue its defense of Samply.
Both parties agree that there is a split of authority among the various jurisdictions over the issue now before us. In most of the cases cited to us, the insurer sought to tender the policy limits and be absolved of its duty to defend after it had either settled with the plaintiff for the amount of those limits or the insurance claimant had obtained a judgment equal to or exceeding those limits. This is not the situation which exists in the present case. In this case, neither was there a settlement nor had the insurer paid a judgment in favor of the claimants against its insured; instead, Integrity was allowed to tender its policy limits and withdraw from the defense of the claim against its insured, without the consent of its insured and without a determination of the liability of its insured. Although courts are divided on the question, Annot., 27 A.L.R.3d 1057 (1969), the general rule is that an insurer is not absolved of its duty to defend in the latter situation where the policy limits are tendered, without the consent of the insured, prior to settlement or judgment. Zulkey Pollard,The Duty to Defend After Exhaustion of Policy Limits, For The Defense, June 1985, at 21, 23.
Insofar as we can determine, this is a question of first impression in this state. We begin our consideration of the question by stating some familiar principles of insurance law.
An insured, of course, has a primary right against his liability insurer to reimbursement for loss falling within the coverage defined in the policy, and the scope of that right ordinarily is determined by the construction of the clauses in the policy which define the bodily injury liability and property damage liability coverages.
It is also well settled that an insurer's duty to defend is broader than its duty to pay. Oxford Lumber Co. v. Lumbermen'sMutual Insurance Co., 472 So.2d 973 (1985); Upton v.Mississippi Valley Title Insurance Co., 469 So.2d 548 (Ala. 1985); Allstate Insurance Co. v. Shirah, 466 So.2d 940 (Ala. 1985).
Integrity relies heavily upon Lumbermen's Mutual Casualty Co.v. McCarthy, 90 N.H. 320, 8 A.2d 750 (1939), which did hold that, upon satisfying a judgment equal to its policy limits, an insurer was relieved of its duty to defend, but the court specifically noted:
 "This does not necessarily mean that the insurer may elect to pay the full limit of its coverage to the insured and thereby cast upon his shoulders the full burden of investigation, settlement or defense from the beginning. . . . . Neither do we mean to hold that an insurer may abandon its defense of a claim within the terms of its policy in mid-course and under circumstances which are prejudicial to the rights of the insured." *Page 82 
(Citations omitted.) (Emphasis added.)
90 N.H. at 323-324, 8 A.2d at 752.
Integrity argues that a number of other courts have tied the exhaustion of the duty to defend to the exhaustion of the liability coverage. It cites in addition to McCarthy, the following cases in support of that proposition: GeneralCasualty Co. v. Whipple, 328 F.2d 353 (7th Cir. 1964); Denhamv. LaSalle-Madison Hotel Co., 168 F.2d 576 (7th Cir. 1948);Allstate Insurance Co. v. Montgomery Trucking Co., 328 F. Supp. 415
(N.D.Ga. 1971); Commercial Union Insurance Co. v. Adams,231 F. Supp. 860 (S.D.Ind. 1964); Aetna Casualty Surety Co. v.Certain Underwriters at Lloyds of London, 56 Cal.App.3d 791,129 Cal.Rptr. 47 (1976); National Union Insurance Co. v.Phoenix Insurance Co., 301 A.2d 222 (D.C. 1973); Liberty MutualInsurance Co. v. Mead Corp., 219 Ga. 6, 131 S.E.2d 534 (1963);Oda v. Highway Insurance Co., 44 Ill. App.2d 235, 194 N.E.2d 489
(1963); Sutton Mutual Insurance Co. v. Rolph, 109 N.H. 142,244 A.2d 186 (1968); Travelers Indemnity Co. v. New England BoxCo., 102 N.Y. 380, 157 A.2d 765 (1960).
Integrity recognizes, of course, that "there are courts that have held that the insurer must defend although coverage may be exhausted."
In all but two of the cases cited by Integrity to support its position, [viz., Commercial Union Insurance Co. v. Adams,231 F. Supp. 860 (S.D.Ind. 1964), and National Union Insurance Co.v. Phoenix Assurance Co., 301 A.2d 222 (D.C. 1973)], there was either a settlement or a judgment exhausting the policy limits prior to the insurers seeking to withdraw its defense.
In Adams, supra, at 864-866, the court rejected the reasoning of American Casualty Co. v. Howard, 187 F.2d 322 (4th Cir. 1951), which held that the insurer's duty to defend continued even after judgment exhausting the policy limits, and adopted the language of McCarthy, supra, that "after the policy limits had been paid on a first judgment . . . the insurer had no further duty to defend." (Emphasis added.) The Adams court also followed the holding of Denham v. LaSalle-Madison Hotel Co.,168 F.2d 576 (7th Cir. 1948), cert. denied, 335 U.S. 871,69 S.Ct. 167, 93 L.Ed. 415 (1948), which allowed an insurer to be discharged of its duty to defend upon tender of its policy limits.
Similarly, even though the court in National Union recognized that the language of McCarthy prohibited an insurer from abandoning its insured in the middle of a proceeding, NationalUnion, supra, n. 4 at 224, the court chose to follow Adams, holding that, upon tender of its policy limits, the insurer was discharged of any further duty to defend. National Union,supra, at 225. We believe that Adams and National Union should not be followed in this jurisdiction.
Some jurisdictions hold that the insurer's duty to defend extends until the first recovery which exhausts the policy limit. Anchor Casualty Co. v. McCaleb, 178 F.2d 322 (5th Cir. 1949); Allstate Insurance Co. v. Montgomery Trucking Co.,328 F. Supp. 415, 417 (N.D.Ga. 1971) (citing Liberty MutualInsurance Co. v. Mead, 219 Ga. 6, 131 S.E.2d 534 (1963));Simmons v. Jeffords, 260 F. Supp. 641 (E.D.Pa. 1966); Conway v.Country Casualty Insurance Co., 97 Ill. App.3d 768,423 N.E.2d 559 (1981), rev'd in part on other grounds, 92 Ill.2d 388,442 N.E.2d 245 (1982); Sutton Mutual Insurance Co. v. Rolph,109 N.H. 142, 244 A.2d 186 (1968). The term "recovery" has been interpreted to mean either the payment of a settlement or of a judgment. Gross v. Lloyds of London Insurance Co.,121 Wis.2d 78, 358 N.W.2d 266, 270 (1984).
Because of the policy language in this case, we believe that the better rule is that an insurer's duty to defend is not discharged by paying the policy limits into court.
Even the court in Keene Corp. v. Insurance Company of NorthAmerica,` 597 F. Supp. 946 (D.D.C. 1985), which held that an insurer was relieved of its duty to defend upon a settlement exhausting the policy *Page 83 
limits, apparently recognized that its holding would have been different if the insurer had attempted to tender the limits prior to settlement or judgment. Citing cases holding that the insurer's duty to defend continued where no settlement or judgment existed, the Keene Corp. court stated:
 "The courts' concern was that by tendering the limits, the insurer would avoid all burdens of defense, even those associated with the payment of the policy limits. Thus, the insured would receive no defense coverage as provided by the policy. `The defense of such suits by the insurer is a valuable right of the insured for which he pays and to which he is entitled by the very words of the policy.' American Casualty Co. of Reading, Pa. v. Howard, 187 F.2d at 327; see also, Simmons v. Jeffords, 260 F. Supp. 641, 642 (E.D.Pa. 1966) (`[A] most significant protection afforded by the policy — that of defense — is rendered a near nullity' if the duty to defend terminates upon tendering the limits); 7C Appleman, Insurance Law and Practice § 4682 at 36 (rev. ed. 1979) (The decisions that required a continuing duty to defend were `a way to make sure the insurer would not abandon the insured by simply depositing its limits in court.')."
597 F. Supp. 952.
This principle, which we adopt, that an insurer is relieved of its duty to defend only upon exhaustion of its policy limits by settlement or judgment, seems consistent with the principle contained in the legal literature in this area. For example, 7C Appleman, Insurance Law and Practice, § 4682 (1979), provides:
 "[T]he primary insurer may not walk away from the insured by paying relatively low limits into court and abandon the insured with a substantial judgment simply because the cost of appeal or other handling may be formidable. The insured's interests may demand continued protection despite threatened exhaustion of the primary limits."
Corley Gamble, Alabama Law of Damages, § 27-3 (1982), provides:
 "The standard automobile liability policy obligates the insurer to pay on behalf of the insured all sums which the insured becomes legally obligated to pay as damages because of bodily injury, sickness or disease, including death therefrom, and injury to or destruction of property, including the use thereof, arising out of the ownership, maintenance or use of the owned automobile, or any non-owned automobile. However, this obligation to `defend any suit' refers not only to the type of coverage, but also to the amount of coverage, and the duty to defend it limited by the amount of liability coverage afforded by the policy. It follows that the insurer is not required to defend remaining claims and suits after it has exhausted the policy limit in settling suits arising from the same accident." (Emphasis added.)
A publication of the insurance defense industry itself, see
Zulkey Pollard, supra, at 23, discusses the issue of termination of liability, and concludes:
 "[E]ven in jurisdictions that have followed McCarthy
and have held that an insurer can terminate its defense obligation by paying the maximum amount of coverage specified by the policy, it has been widely accepted that the insurer cannot avoid its obligation to defend against an insured's contingent liability by early payment of the policy limits without effectuating a settlement or without obtaining the permission of the insured. . . . However, when a settlement is reached in which the insured consents and contributed beyond the insurer's payment of its policy limits, clearly any duty to defend will cease. Liberty Mutual Insurance Co. v. Mead Corp."
(Citations omitted.)
In consideration of the foregoing authority, we hold that the better rule of law is that an insurer, when it obligates itself to defend, as we find the insurer did in this case, cannot avoid its duty to defend against an insured's contingent liability by *Page 84 
tendering the amount of its policy limits into court without effectuating a settlement or obtaining the consent of the insured.
The judgment of the circuit court holding otherwise is reversed and the cause is remanded to that court for the entry of a judgment not inconsistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
FAULKNER, JONES, SHORES and BEATTY, JJ., concur.