**BURFORD EQUIPMENT COMPANY, INC., et al., Plaintiffs,**

v.

**CENTENNIAL INSURANCE COMPANY, et al., Defendants. (Two Cases)**

**Civ. A. Nos. 89–D–181–N, 89–D–518–N.**

United States District Court,
M.D. Alabama,
Northern Division.

April 22, 1994.

Kurt A. Powell, L. Traywick Duffie, Hunton & Williams, Atlanta, GA, for plaintiffs-petitioners Burford Equipment Co., Inc. and J. Lamar Burford, Jr.

William A. Scott, Robert P. Fawn, Clark & Scott, P.C., Birmingham, AL, for defendant-respondent Centennial Ins. Co., Inc.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is now before the court on plaintiffs' motion for further relief and supporting brief, filed March 3, 1994. Defendant International Insurance Company ("International") responded to the plaintiffs' motion with a brief in opposition which was filed on March 25, 1994, as was the brief in opposition submitted by defendant Centennial Insurance Company ("Centennial"). The plaintiffs filed a reply brief in support of their motion for further relief on March 31, 1994, and the intervenors filed a response to defendants' brief in opposition to plaintiffs' motion for further relief on March 31, 1994. Also, before the court is the intervenors' motion to grant further relief on declaratory judgment, filed March 18, 1994. Both defendant International and defendant Centennial filed briefs in opposition to the intervenors' motion on March 31, 1994. The plaintiffs filed a reply brief in support of the intervenors' motion on April 4, 1994.

### FACTS

Centennial issued a Comprehensive General Liability Policy of insurance to Burford, which was effective from August 28, 1984 to August 28, 1987. The policy provided liability coverage in the amount of $1,000,000 per occurrence. In addition, the policy provided in pertinent part that:

The Company will pay, in addition to the applicable limits of liability:

A. all expenses incurred by the Company, all costs taxed against the insured in any suit defended by the Company ...;

B. premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability, and cost of bail bonds required of the insured....

(Pls.' Exh. A at A–19.)

International issued a Commercial Comprehensive Catastrophe Liability Policy or "Umbrella Policy" to Burford to provide excess insurance coverage in the amount of $5,000,000 per occurrence, which became effective August 28, 1986. Under the terms of

the policy, International is required to provide excess coverage for certain liability and to provide a defense for Burford in certain circumstances. The policy provides, in pertinent part, the following:

> J. Underlying Insurance. If the underlying insurance is exhausted by any occurrence the company shall be obliged to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence....

(Pls.' Exh. B at B–6.) Furthermore, the policy provides that when the underlying insurance is exhausted International will:

> (b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish any such bonds;
>
> (c) pay all expenses incurred by the company, all costs taxed against the insured in such suit ...;

(Pls.' Exh. B at B–3.)

Thus far, Centennial has agreed to pay premiums for an appeal bond in the amount of their policy limit, but not in the amount of the judgment. International, according to the brief of the plaintiffs, has not corresponded with the plaintiffs. The plaintiffs have filed this motion for further relief seeking the court to order Centennial, International, or both to pay the premiums on a bond in the amount of the judgment in the underlying action, not in the amount of the policy limits. In addition, the intervenors filed their motion for further relief seeking the court to order Centennial, International, or both to pay prejudgment interest in amounts in excess of their respective policy limits and to pay the premiums on an appeal bond for the underlying action.

---

1. The defendants argue that *Horn* is inapplicable because a mandate from the appellate court had already been returned. However, the reasoning of *Horn* is applicable regardless of whether a mandate had been issued. If a motion for further relief as provided for by the Act does not address the issues currently before the appellate

## DISCUSSION

### I. Jurisdiction

In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), the United States Supreme Court held that, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58, 103 S.Ct. at 402. However, there are exceptions to the *Griggs* rule. According to the Court of Appeals for the Eleventh Circuit, exceptions to *Griggs* include "authority to act in aid of the appeal, to correct clerical mistakes or to aid in the execution of a judgment that has not been superseded." *Showtime/The Movie Channel v. Covered Bridge Condominium Ass'n*, 895 F.2d 711 (11th Cir.1990) (citing *Matter of Thorp*, 655 F.2d 997 (9th Cir.1981)).

■ Another exception to the *Griggs* rule is that the district court retains jurisdiction if the right for further relief is reserved by statute. In the present case, the plaintiffs and intervenors seek further relief under 28 U.S.C.A. § 2202, the Declaratory Judgment Act. The purpose of the Act's provision authorizing motions for further relief is to allow the district court to retain jurisdiction in order to grant the relief necessary to effectuate its prior judgment. *See Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546 (D.C.Cir.), *cert. denied*, 488 U.S. 849, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988). The reservation of jurisdiction present in 28 U.S.C.A. § 2202 for motions for further relief is a statutory exception to the Court's rule in *Griggs*.

■ In *Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546 (D.C.Cir.), *cert. denied*, 488 U.S. 849, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988),[1] the circuit

---

court, the district court retains jurisdiction to grant any further relief necessary for the court to enforce its prior ruling. Furthermore, the defendants' argument, as explained later in this opinion, is now moot after the Court of Appeals for the Eleventh Circuit affirmed this court's prior

court held that the " 'further relief' provisions of both state and federal declaratory judgment statutes clearly anticipate ancillary or subsequent coercion to make an original declaratory judgment effective." *Horn,* 843 F.2d at 548. The court further opined that to prevent a district court from enforcing its judgment by holding that its jurisdiction in a declaratory judgment action expires when a notice of appeal is filed would be contrary to common sense. *Id.* Accordingly, the only issues to which the district court loses jurisdiction when a notice of appeal is filed are "those aspects of the case involved in the appeal." *Id.*

■ In *In re Bicoastal Corp.,* 156 B.R. 327 (Bankr.M.D.Fla.1993), the court ruled on a motion for further relief in a declaratory judgment action while an appeal of the underlying order was pending in the appellate court. In determining that it had jurisdiction over the motion, the court ruled that the relief sought was supplemental and therefore, would not hinder the appellate court's ruling over whether its prior order was appropriate. The same is true in this case. The court finds that its ruling over whether the defendants should be required, in accordance with their policies, to pay the premiums on an appeal bond will only supplement the court's prior ruling which determined the liability of the defendants.

■ The issues involved in the present motion for further relief are exactly those supplemental issues for which motions for further relief are authorized. The plaintiffs in this case move the court to order that the defendants post a supersedeas bond in accordance with the court's prior order that the insurance companies are bound to provide liability coverage pursuant to their policies for the amount of the judgment in the underlying case. The determination of whether the defendants should be required to post a

bond falls squarely within the court's authority to enforce its prior ruling. A court has an inherent right to enforce its orders. Borchard, *Declaratory Judgments* 441 (2 ed. 1941).

Therefore, the court finds that it is within its jurisdiction to order the defendants to post an appeal bond, if it so decides.[2] To do so, would simply involve the enforcement of its earlier opinion. Addressing whether the defendants are required to post an appeal bond will not hinder the decision of the appellate court, but will only serve to enforce the prior order of the court. Therefore, the court finds that it has jurisdiction to rule on the plaintiffs' and intervenors' motions for further relief.

■ However, even if the court had found that it did not have jurisdiction to consider the plaintiffs' and intervenors' motions for further relief while its prior decision was on appeal, events while the motions were under submission would have enabled the court to rule on the motions. On April 12, 1994, the Court of Appeals for the Eleventh Circuit affirmed the decision of the court without opinion. *See Burford Equipment Co. v. Centennial Ins.,* No. 93–6028 (11th Cir. April 12, 1994) (affirming the court for the reasons stated in the district court's opinion). Therefore, the issues regarding jurisdiction raised by the defendants are now moot. Just as the court in *Horn* clearly had jurisdiction where the appellate court had issued its mandate, this court has jurisdiction to decide the motions for further relief. In drafting this opinion, the court had already found that it had jurisdiction under a statutory exception to the *Griggs* rule. However, regardless of that preliminary determination, the jurisdictional issue is now moot, and it is clearly within the authority and jurisdiction of this court to rule on the plaintiffs' and intervenors' motions for further relief.

---

decision concerning the presence of insurance coverage in this case.

**2.** Defendant International argues in its brief that the district court's jurisdiction would not serve to aid the appeal, correct a clerical error, or aid in the execution of judgment and that therefore, the court should refrain from ruling on this matter because, "[w]hat is the effect of an order from this court declaring that Defendants have an

obligation to pay the premium on an appeal bond if the Eleventh Circuit were to hold that Defendants' policies afford no coverage for the *Hollingshead* and *Callahan* actions?" (Def. Int'l's Br. Opp. M. Further Rel. at 6.). After the defendant submitted its brief, the court of appeals rendered defendant International's question moot by affirming this court's earlier decision.

## II. Payment of Premiums on Appeal Bond

The second issue to be considered in the plaintiffs' motion for further relief is whether the defendants have a duty to pay the premiums on an appeal bond in the amount of the judgment or in the amount of each companies' policy limits. Upon the representation of the plaintiffs in their reply brief in support of their motion, the issue of whether the insurers are obligated to pay attorneys' fees in excess of each policies' limits is not before the court.

■ Because the parties in this action are diverse, Alabama law is applicable. Under Alabama law, insurance contracts are construed in such a manner as to give effect to the intentions of the parties to the contract, and when those intentions are unclear, the policy must be enforced as written. *Wakefield v. State Farm Mut. Auto. Ins. Co.,* 572 So.2d 1220, 1223 (Ala.1990). The language of the policy should be given its clear meaning, and if that is uncertain, the policy should be construed favorably to the insured. *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Goodman,* 279 Ala. 538, 188 So.2d 268 (1966).

### A. Centennial Insurance Company

■ The express terms of the underlying insurance policy issued by Centennial provide that in addition to the liability limits of the policy, where Centennial has a duty to defend the insured, it must "pay the premiums on appeal bonds required in any such suit." [3] The court finds that the language of the policy is clear. Centennial, unless it no longer has a duty to defend the suit on the plaintiffs' behalf, has a clear duty to pay the premiums on the appeal bond regardless of whether the amount of the bond exceeds the policy's limits because the language of the policy couches the duty to post bond as one "in addition to the applicable limits of the policy." Therefore, the court finds that the

amount of the bond is not limited by the policy's liability limits but that Centennial, if it has a duty to defend, should be required to pay the premiums on an appeal bond in the amount of the judgment in the underlying action.

■ It is well settled that an insurer's duty to defend is broader than the duty to pay. *Oxford Lumber Co. v. Lumbermens Mut. Ins. Co.,* 472 So.2d 973 (1985). Centennial further argues, however, that they no longer have a duty to defend, and thus, no longer have a duty to pay the premiums on an appeal bond in any amount.

Centennial submits to the court that its duty has terminated because: (1) Its limit of liability has been exhausted by the underlying judgment in this case, (2) it has tendered its limit of liability, and (3) the termination of Centennial's duty to defend would not adversely affect the plaintiff at this point in the litigation.

(Centennial's Br. in Opp. to Pls.' M. Further Rel. at 3.).

Centennial's arguments are based on *Samply v. Integrity Ins. Co.,* 476 So.2d 79 (Ala. 1985). In *Samply,* the Supreme Court of Alabama addressed the question for the first time of whether an insurer's duty to defend expires when it tenders its policy limits before there has been a settlement or before a judgment is paid. The court held that an insurer's duty to defend is not discharged by paying the policy limits into the court. *Samply,* 476 So.2d at 82. On the contrary, the court adopted the rule that "an insurer is relieved of its duty to defend only upon exhaustion of its policy limits by settlement or judgment." *Id.* at 83. The court further opined that "the insurer cannot avoid its duty to defend against an insured's contingent liability by tendering the amount of its policy limits into court without effectuating a settlement or obtaining the consent of the insured." *Id.* at 83–84.

---

**3.** As quoted earlier, the pertinent portion of the policy reads as follows:

The Company will pay, in addition to the applicable limits of liability:
A. all expenses incurred by the Company, all costs taxed against the insured in any suit defended by the Company ...;

B. premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability, and cost of bail bonds required of the insured....
(Pls.' Exh. A at A–19.)

Centennial asserts that it has tendered the limits of its policy with Burford, and therefore, should be relieved of its duty to defend. No settlement has been reached in this case. Because the underlying action is on appeal to the Court of Appeals for the Eleventh Circuit, the judgment in that action has not yet been paid. In addition, even if either of those *Samply* prerequisites had occurred, Centennial has offered no evidence that it has tendered the limits of its policy.[4] The court finds that Centennial has not satisfied the prerequisites found in *Samply.* Therefore, Centennial is not relieved of its duty to defend Burford, the insured, in the underlying action.

Because Centennial has not been relieved of it duty to defend, Centennial must continue to honor its obligations under the policy. Centennial states in its policy that "in addition to the applicable limits of liability," Centennial promises to pay "premiums on appeal bonds required in any such suit." The provision of the policy indicates that the obligation to post an appeal bond is not limited to the policy limits, as Centennial argues.[5] Centennial did not promise to post an appeal bond in the amount of the policy limit, but promised that "in addition to the applicable limits" to pay the premiums on the appeal bonds "required" in "any such suit." Consequently, the court finds that Centennial must pay the premiums on an appeal bond in the underlying action in the amount of the judgment.

### B. International Insurance Company

International does not dispute its obligation to defend Burford if Centennial is divested of its duty to do so by paying out the limits of its policy pursuant to *Samply.* No duty has arisen for International to defend because the court has found that Centennial has not been relieved of its duty to defend. Thus, International has no duty to pay the premiums on an appeal bond in the amount of the judgment unless the policy limits under Centennial's policy have been exhausted. The court finds, however, that if Centennial pays the limits of its policy and complies with the mandates of *Samply,* International is required under its policy to pay the premiums on an appeal bond.[6]

### III. Intervenors' Motion for Further Relief

In their motion for further relief, the intervenors move the court to order the defendants to pay prejudgment interest with respect to the underlying judgment against Burford, even if the interest exceeds their policy limits. The intervenors move the court to order the interest to accrue at 6.75% per annum. Also, the intervenors seek an order requiring the defendants to pay the premiums on an appeal bond in the amount of the judgment.[7]

Under Alabama law, it is clear that there is a statutory right to prejudgment interest, codified at *Alabama Code* § 8–8–8 (1993), under an insurance policy. *United States Fid. & Guar. Co. v. German Auto, Inc.,* 591 So.2d 841 (Ala.1991). Section 8–8–8 provides that:

All contracts, express or implied, for the payment of money, or other thing, or for

---

**4.** Centennial asserts in its brief that it tendered the limits of its policy during settlement negotiations. The court finds that offers to pay a portion of the policy's limits during settlement negotiations contingent on a number of concessions by the plaintiffs is not sufficient to constitute tendering the limits of the policy. Moreover, the court's finding is further supported by the fact that Centennial has made no payment of the policy limits or of any other amount to the plaintiffs.

**5.** Unless otherwise proven, the court must give the language of the policy its plain meaning. *Wakefield v. State Farm Mut. Auto. Ins. Co.,* 572 So.2d 1220, 1223 (Ala.1990).

**6.** It is clear that International could later "drop down" due to the exhaustion of Centennial's coverage and be required to defend the underlying action. However, in relation to that occurrence, the court finds that it is unnecessary at this time to determine the outer limits of what International may be required to pay in satisfaction of the judgment and in satisfaction of the attorneys' fees that have accrued in the case.

**7.** The court resolved the issue of whether the defendants were required to pay the premiums on an appeal bond in the amount of the judgment earlier in this memorandum opinion and order. Therefore, the court finds that it is unnecessary to address that issue any further.

the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed.

Ala.Code § 8–8–8 (1993). In *Thomas v. Liberty National Life Insurance Co.*, 368 So.2d 254 (Ala.1979), the Supreme Court of Alabama held that § 8–8–8 is automatically a part of an insurance contract as a matter of law, regardless of the provisions of the policy.

Centennial concedes that it is "obligated to pay ... prejudgment interest," but argues that it is not liable for "interest which is in excess of the liability limits." (Centennial's Br. in Opp. to Intervenors' M. Further Relief at 5.) Both defendants also do not dispute that if they do have to pay prejudgment interest that an appropriate interest rate is 6.75%. Therefore, the issues before the court are: (1) Which of the defendants is liable for prejudgment interest, and if both, in what proportion?; and (2) Are the defendant(s) liable for prejudgment interest in excess of the limits of the insurance policies?.

█ First, the court must decide which defendant or if both are liable for the prejudgment interest. Centennial, as discussed earlier, has the duty to defend this action as the primary insurer. International has no obligation to defend unless Centennial tenders its policy limits in accordance with *Samply,* thus, causing International to "drop down" in the place of the primary insurer. In *Michigan Milk Producers Association v. Commercial Union Insurance Co.*, 493 F.Supp. 66 (W.D.Mich.1980), the district court ruled that primary insurers with full control over the underlying litigation are obligated to pay all prejudgment interest awarded in the case. According to the *Michigan Milk* court, payment of prejudgment interest ensures that the insurer has an incentive to settle meritorious claims against the insured. *Michigan Milk,* 493 F.Supp. at 71. Otherwise, the insurer may refuse to settle in order to force the plaintiff to settle for less than their claim is worth, without any risk for causing the delay and while receiving investment income on the policy limits. *Id.*

The court agrees. Because Centennial as primary insurer had total control over the litigation and because International does not yet have a duty to defend in this case, the court finds that defendant Centennial is liable for all of the prejudgment interest warranted in this case.

█ Secondly, as to the amount on which the defendant Centennial should be required to pay prejudgment interest, Centennial argues that they are not required to pay prejudgment interest in excess of their policy limits because the payment is not provided for in their policy. (*See* Centennial's Br. in Opp. to Mot. for Further Relief at 3–13.) The underlying purpose of prejudgment interest is to compensate a plaintiff in a direct action for the loss of use of the money for which the plaintiff had a right to be paid. The court agrees with the sentiments expressed by the court in *Denham v. Bedford,* 407 Mich. 517, 287 N.W.2d 168 (1980), when it commented on the efforts of insurers to evade their responsibility for prejudgment interest:

> Since this part of the insured's liability is controlled by the time required for litigation, a matter largely under the control of the insurer, which by contract insisted upon this control, the courts as a matter of public policy should strike down any provision barring the insurer from being liable for prejudgment interest. Any other result allows the insurer to engage, with impunity in delaying tactics at the expense of the insured.

*Denham,* 287 N.W.2d at 175 (quoting 8 Appleman, Insurance Law and Practice § 4899 (Supp.1979)). Because the insurer has a contractual right to control the litigation and because the insurer's control renders the insured powerless to settle a claim against themselves, the court finds that defendant Centennial is liable for prejudgment interest in excess of its policy limits.

### CONCLUSION

In sum, it is CONSIDERED and ORDERED that the plaintiffs' motion for further relief be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that defendant Centennial Insurance Company pay the premiums on the appeal bond in the underlying action in the amount of the judgment.

It is further CONSIDERED and ORDERED that intervenors' motion for further relief be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that defendant Centennial Insurance Company pay prejudgment interest in accordance with this memorandum opinion and order.