**George R. KNIPPEN**

v.

**GLENS FALLS INSURANCE COMPANY, Appellant.**

No. 76–1632.

United States Court of Appeals, District of Columbia Circuit.

Argued June 15, 1977.
Decided Aug. 15, 1977.

David M. Moore, Washington, D. C., with whom James C. Gregg, Washington, D. C., was on the brief, for appellant.

Barry S. Simon, Washington, D. C., for appellee. David N. Webster and Paul Martin Wolff, Washington, D. C., were on the brief, for appellee.

Before WRIGHT and MacKINNON, Circuit Judges, and HOWARD T. MARKEY *, Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the court PER CURIAM.

Circuit Judge J. SKELLY WRIGHT took no part in the consideration of this case.

PER CURIAM:

The questions in this case concern the meaning of a "supplementary payments" clause in an automobile liability insurance contract, and the effect of an agreement

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

between the insuror and the insured on the insuror's liability for such payments to an injured third party.

## I.

In March 1970, George R. Knippen was severely injured while riding a motorbike when struck by a car owned by Joseph C. and Winifrede B. DeWeese. The DeWeeses had contracted for a policy of automobile liability insurance with the Glens Falls Insurance Company. Subject to a limit of fifty thousand dollars per person, the policy provided coverage for:

Coverage A—Bodily Injury Liability;

. . .

A. Bodily Injury, sickness or disease,

. . .

. . . . .

arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall *defend any suit* alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

R. 14, Pltfs. Exhibit C, J.App. 28 (emphasis added). The policy also made the company liable for

Supplementary Payments: To pay, in addition to the applicable limits of liability:

(a) all expenses incurred by the company, all *costs* taxed against the insured in any such suit and all *interest* on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon.

. . . . .

*Id.* (emphasis added).

Shortly after the accident negotiations for a settlement were commenced. Since it appeared to all concerned that the DeWeeses' liability would exceed their policy limit, they retained separate counsel. Glens Falls then sought to avoid any duty to defend by tendering to Knippen the full $50,000. This offer was refused. Subsequently, a diversity suit was filed by Knippen in the district court against the DeWeeses and the Ford Motor Company, the manufacturer of the car. On January 10, 1974, Glens Falls' attorney and the DeWeeses signed a letter agreeing that Glens Falls would pay the policy limits in the event of a judgment or settlement of at least that amount, and that Glens Falls would withdraw from the defense of the case.[1]

On May 27, 1975, on the basis of a jury verdict, the district court entered judgment against the DeWeeses for $300,000 but or-

---

1. 
                                January 10, 1974

Charles L. Aulette, Esquire
1725 K Street, N.W.
Washington, D.C.
    Re: *Knippen v. DeWeese*
Dear Mr. Aulette:

I understand from our prior communications with respect to the above matter that your clients, the DeWeeses, are agreeable to your taking over the further defense of this case on their behalf and our withdrawal therefrom in view of the legal doctrine of *National Union v. Phoenix.*

Furthermore, that rather than posting the policy limits with the Court, the Company will pay the same upon the entry of a judgment of that amount, or in excess thereof, or upon settlement of the case.

It, of course, is further agreed that the continued defense of the cases involved will be without further expense on the part of your clients' liability insurance company, other than payment of judgment or settlement as aforesaid.

This being so, I would appreciate your having your clients sign a copy of this letter under the notation "Agreed" and returning to me. In the interim, I am enclosing the original and three copies of a praecipe substituting our appearance.

                    Very truly yours,
                    /s/ James C. Gregg
                    JAMES C. GREGG
    JCG:ebs
    encls:
    AGREED:
/s/ Winifrede B. DeWeese
    WINIFREDE B. DeWEESE
/s/ Joseph C. DeWeese
    JOSEPH C. DeWEESE
    cc: J. Robert Smith, Esquire
        055–07252
R. 16, Defts. Exhibit D, J.App. 66–67.

dered that Ford "shall pay" $250,000 of that amount. R. 14, Pltfs. Exhibit A. In a separate appeal, this court affirmed the judgment against Ford and the trial court's entry of summary judgment for the defendants on the claim for punitive damages. *Knippen v. Ford Motor Company,* 178 U.S. App.D.C. 227, 546 F.2d 993 (1976).

On July 18, 1976, Glens Falls forwarded to Knippen a draft in the amount of $50,000. Because a letter forwarded with the draft stated that it was tendered "in full and final payment of the verdict against" the DeWeeses, R. 16, Defts. Exhibits E–F, J.App. 68–69, Knippen refused it. On September 2, 1975, the DeWeeses petitioned the district court to accept the check in full and final payment of the judgment against them. On September 15, 1975, the district court by order denied this request and clarified its original judgment by stating that the DeWeeses and Ford were to be jointly liable to the extent of $250,000, and that the judgment included interest and costs. R. 14, Pltfs. Exhibit B. Knippen subsequently demanded that Glens Falls remit to him not only the $50,000, but also costs and interest on the entire $300,000 judgment from the date of its entry. On October 22, 1975, Knippen filed the present diversity action against Glens Falls in the district court, seeking this recovery. Glens Falls made an unconditional tender of $50,000 on October 25, 1975, and Knippen accepted it. By order on April 30, 1976, the district court entered summary judgment awarding Knippen costs and interest on the entire

judgment from May 27, 1975, to October 25, 1975.[2] Glens Falls appeals.[3]

## II.

Glens Falls contends, first, that its tender of the full policy limits relieved it of any duty to make "supplementary payments" on the judgment, and second, that Knippen is bound by the agreement between the DeWeeses and Glens Falls from recovering such payments.

Appellant rests its first argument upon *National Union Ins. Co. of Washington, D. C. v. Phoenix Assurance Co. of New York,* 301 A.2d 222 (D.C.App.1973). In *National Union,* the District of Columbia Court of Appeals resolved a conflict among the various jurisdictions and concluded that under the terms of the liability insurance contract before it, the insurer's duty to defend terminated when the insurer deposited with the court an amount equal to the policy limit. Glens Falls now argues that the obligation to make supplementary payments of interest and costs, like the duty to defend, cannot continue after the insurer has effectively withdrawn by either paying or tendering its maximum liability and therefore has no further interests to protect. Knippen argues, on the contrary, that the duty to make "supplementary payments" is unlike the duty to defend in that it is principally for the benefit of the insured, who would otherwise stand liable for these payments.

---

2. Knippen was awarded compensatory damages totaling $9,643.47 on the basis of the following computation:

    1. The court costs assessed in *Knippen v. Ford Motor Company, et al.,* C.A. 1725–72 and *Knippen v. DeWeese,* C.A. 588–73 and entered on the docket of this Court on June 13, 1975.    $1,863.24

    2. Interest on $300,000 from May 27, 1975, the date of entry of the judgment in the aforementioned actions, up to an including October 25, 1975, the date on which the defendant tendered that part of the judgment which did not exceed the limits of its liability thereon.    7,446.58

    3. Interest at the statutory rate of six percent on the court costs from June 13, 1975, up to and including the date of this judgment.    99.85

    4. Interest at the statutory rate of six percent from October 25, 1975, up to and including the date of this judgment.    233.80

    $9,643.47

J.App. 87.

3. The district court also granted Glens Falls' motion for summary judgment on Knippen's prayer for punitive damages in the amount of $2,000,000. Knippen did not appeal.

Both parties base their contentions too heavily upon general policy arguments and insufficiently upon a consideration of the specific contractual language. The decision of the D.C. Court of Appeals in *National Union* involved simply the interpretation of a contract. The insurance policy in that case provided for the insurer's duty to defend and make supplementary payments in the following terms:

> *With respect to such insurance as is afforded by this policy,* the company shall:
>
> (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . .
>
> (b)(1) . . .
>
> (2) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon . . . .

301 A.2d at 224–25 (emphasis by the court). The decision of the D.C. Court of Appeals turned closely on the language of the insurance contract before it:

> *By its terms,* the *contract provision* for defense of claims is "[w]ith respect to such insurance as is afforded by this policy." The policy does not provide for defense against a claim when the carrier concedes liability to the policy limit. *The contract also specifically provides that the company must pay all expenses* until the company has deposited such part of the judgment as does not exceed the limit of the company's liability. With the depositing of an amount equal to the policy limits, and having investigated and defended the cause of action in good faith to that point, the responsibility of [the insurer] terminated.

301 A.2d at 225 (emphasis added).

This paragraph of the *National Union* opinion suggest that the D.C. Court of Appeals would have treated the duty to make "supplementary payments" like the duty to defend. But it also makes clear that the court's decision turned not on abstract policy propositions, but upon the interpretation of the contractual language before it. Like the *National Union* court, we must consider the actual provisions of the contract at issue in this case.

The terms of Glens Falls' contract differed from that in *National Union* in material respects. The provision requiring the company to defend was subject to no general limitation like that above, but instead provided as *part of coverages* A and B, that the company

> shall defend any suit alleging such bodily injury or property damage and seeking payments which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent. . . .

R. 14, Pltfs. Exhibit C, J.App. 28. The provision establishing Glens Falls' duty to defend was thus not merely collateral to the principal coverages and applicable only "[w]ith respect to such coverage as is afforded by [the] policy," but rather was an integral part of the two principal coverages and required the company to "defend any suit alleging such bodily injury . . . and seeking payments which are payable under the terms of this policy," without any other limitation. Although we need not finally resolve the question in the present case, this language appears to invest the company with a more absolute duty to defend than that in *National Union*.

Also unlike the policy in *National Union*, Glens Falls' duty to make "supplementary payments" was not applicable only "[w]ith respect to such insurance as is afforded by [the] policy"; rather, Glens Falls' obligation to make such payments was established in a separate paragraph and the liability was "in addition to the applicable limits of liability." Like the contract in *National Union*, however, Glens Falls' liability extended to three forms of supplementary payments:

[1] all expenses incurred by the company, [2] all costs taxed against the insured in any such suit and [3] all interest on the entire amount of any judgment and before the company has paid or tendered or deposited in court that part of the company's liability thereon . . . .

R. 14, Pltfs. Exhibit C, J.App. 28. As the inserted numbers indicate, the language of this paragraph divides naturally into three phrases. The *National Union* court concluded only that the company's liability for the first class of supplementary payment, where it was subject to the same limiting language as the duty to defend, was dependent on the continuation of that duty. Of course, once the duty to defend is properly terminated, the company should cease incurring such "expenses," and such liability is in any event not in issue in this case.

■ The second form of supplementary payment, for "costs," is limited only by the phrase "in any such suit." Under the most reasonable reading of the paragraph's language, it is not limited by the "paid or tendered or deposited" phrase modifying the third phrase. We do not read the phrase "in any such suit" as permitting the company to avoid its liability for costs by withdrawing from the suit prior to the entry of judgment, particularly where, as here, this duty is not subject to the "[w]ith respect to such insurance as is afforded by this policy" limitation of the contract in *National Union.* Costs are normally fixed in amount at the time of judgment and do not depend on the magnitude of compensatory damages for which a party is liable. Absent language more clear than that here, it would be contrary to established rules of construction to permit the party that drafted the contract to escape such liability by the simple expedient of withdrawing from the defense of the suit before judgment. We thus conclude that Glens Falls' liability for costs continued whether or not it effectively avoided its duty to defend.

Glens Falls' liability for post-judgment interest, however, by the terms of the contract continued only until "the company has paid or tendered or deposited in court that part of the company's liability" on the judgment. Effective payment, tender or deposit contemporaneous with or prior to judgment would presumably avoid all liability for interest. We thus must consider the meaning of this contractual language. While *National Union* is not directly controlling, we find its analysis and the cases upon which it relied to be helpful.

It is undisputed that Glens Falls neither "paid" the amount of its maximum liability to any person nor "deposited" such amount with the district court. The remaining question is thus whether it effectively "tendered" such amount within the meaning of the contractual term. In *National Union,* the company had made an unconditional deposit of its potential liability into the court, and some of the cases upon which it relied involved a similar unconditional deposit with the court. *Commercial Union Ins. Co. of New York v. Adams,* 231 F.Supp. 860, 866–67 (S.D.Ind.1964); *General Casualty Co. of Wisconsin v. Whipple,* 328 F.2d 353, 357–58 (7th Cir. 1964). In other cases, the insurer was relieved of its duty to pay the costs of defense when it made full and unconditional payment of the policy limits to one of several third parties who had obtained a judgment against the insured. *Liberty Mutual Ins. Co. v. Mead Corp.,* 219 Ga. 6, 131 S.E.2d 534 (1963); *Lumberman's Mutual Cas. Co. v. McCarthy,* 90 N.H. 320, 8 A.2d 750 (1939). In one case, the insurer made an immediate and unconditional tender to the insured of the full policy limit, reserving only the "right of the insurer to deny liability under the policy for any *further* claim," *Denham v. La Salle-Madison Hotel Co.,* 168 F.2d 576, 578 (7th Cir.), *cert. denied,* 335 U.S. 871, 69 S.Ct. 167, 93 L.Ed. 415 (1948) (emphasis added).

These cases strongly suggest that the company must *unconditionally* surrender control over funds equal to its potential liability in order to satisfy the contractual requirement of "tender[ ]." Without actual surrender of control, the company would retain the use of the funds and the ability to draw interest on them. So long as the

company is able to earn interest on the funds, it is illogical to interpret the contract to absolve it of the liability to pay this interest over to the person who has obtained a judgment. The ability thus to avoid liability for interest would render meaningless the alternatives of payment or deposit in the court.

■ Glens Falls' liability for interest on the *entire* amount of any judgment," including that amount in excess of the policy limits, is established by the express language of the contract. We conclude that neither Glens Falls' conditional promise in the letter to the DeWeeses to pay any judgment or settlement to the extent of the policy limits,[4] nor the conditional tender to Knippen "in full settlement" of his claims against the DeWeeses, amounted to a sufficient surrender of control over the funds to amount to a "tender[ ]" of such funds within the meaning of the contract, and that therefore its liability for interest continued until its unconditional tender on October 25, 1975. The judgment of the district court is therefore affirmed.

*Judgment accordingly.*

---

**4.** The letter is reproduced in note 1 *supra.* Glens Falls appears also to argue that even if its tender of the policy limit was inadequate to satisfy the requirements of *National Union,* Knippen was nevertheless precluded from any recovery of "supplementary payments" by the letter agreement between Glens Falls and the DeWeeses. As a third-party beneficiary of an insurance contract, Knippen's right to recover against the insurer was no greater than that of the insured. *See, e. g., Molley v. Prudential Ins. Co.,* 129 Conn. 251, 27 A.2d 387 (1942);

*Rodenkirk v. State Farm Mutual Auto Ins. Co.,* 325 Ill.App. 421, 60 N.E.2d 269 (1945). Since Glens Falls drafted both the policy and the letter, however, they must both be strictly construed against it. Even if the letter agreement was effective as a modification or settlement of the company's duty to defend under the contract, which we need not decide, it did not seek to make any change in the duty of the company to make "supplementary payments" of interest and costs. We therefore conclude that the letter had no such effect.