In re Leonard E. TEMPLETON, Jr., and Larrilee H. Templeton, Debtors.

**WEST BEND MUTUAL INSURANCE CO., Plaintiff,**

v.

**Leonard E. TEMPLETON, Jr., a/k/a Len Templeton, Larrilee H. Templeton, a/k/a Larri Templeton, Larrilee Harbin, Larri Harbin and Regina Sukosd, individually and as Special Administrator of the Estate of John Sukosd, Defendants.**

**Bankruptcy No. 92 B 04870.
Adv. No. 92 A 00417.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 14, 1993.

Allan S. Brilliant, Holleb & Coff, Chicago, IL, for debtors.

C. John Ruddy, Truemper, Hollingsworth, Wojtecki, Courtin & Ruddy, John M. Lamont, Thompson, Lamont & Flaherty, P.C., Wayne F. Weiler, Aurora, IL, for Regina Sukosd.

M. Scott Michel, U.S. Trustee, Chicago, IL.

Sara E. Cook, McKenna, Storer, Rowe, White & Farrug, Chicago, IL for West Bend Mut. Ins. Co.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint filed by West Bend Mutual Insurance Co. ("West Bend"), seeking relief by way of declaratory judgment, interpleader and injunction against Leonard E. Templeton, Jr. and Larrilee H. Templeton (the "Debtors"), and Regina Sukosd, individually and as Special Administrator of the Estate of John Sukosd (the "Creditor"). This controversy concerns the determination of the total amount of West Bend's liability under an insurance policy. The principal issues are: if and when West Bend made a timely and sufficient tender of all the subject policy proceeds; computation of the correct amount of the requisite post-judgment interest accrued and owing thereunder; and whether the Court should enter injunctive relief in favor of West Bend against the Debtors and the Creditor. For the reasons set forth herein, the Court having considered the pleadings and the evidence adduced at trial, makes its findings and conclusions discussed hereinafter for the relief sought by way of declaratory judgment and interpleader. The injunctive relief sought is denied.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. §§ 1334, 2201, and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (O).

## II. FACTS AND BACKGROUND

Some of the relevant facts and background are contained in an earlier opinion of the Court. *See In re Templeton,* 146 B.R. 757 (Bankr.N.D.Ill.1992). West Bend issued a homeowner's insurance policy to the Debtors effective November 30, 1988 to November 30, 1989, with limits of liability at $100,000 per occurrence. (West Bend Ex. No. 1). On August 29, 1989, John Sukosd, the Creditor's spouse, was injured as a result of a fall sustained on the Debtors' premises. His fall and subsequent death led to a personal injury and wrongful death action ultimately prosecuted by the Creditor against the Debtors and others. Suit was filed on September 14, 1989, in the Circuit Court for the Sixteenth Judicial Circuit, Kane County, Illinois. West Bend provided counsel and a defense for the Debtors, who also retained separate defense counsel because the Creditor's claim exceeded policy limits. Pretrial settlement negotiations were unsuccessful despite West Bend's policy limits settlement offer.

On February 12, 1992, before the jury rendered its verdict in that action, other co-defendants orally agreed to settle the claims against them in the sum of $500,000. An order approving that settlement was entered on March 3, 1992. Thereafter, the Creditor, through her attorneys, received those settlement funds on March 4, 1992. On February 14, 1992, however, judgment was entered upon the jury verdict in favor of the Creditor against the Debtors in the amount of $3,000,000. (West Bend Ex. No. 2 and Sukosd Ex. No. 1).

On February 20, 1992, West Bend, through one of its local attorneys, James C. James, III, hand-delivered a letter of that same date, signed by another one of its attorneys, Mark Pheanis, together with a draft in the amount of $100,000, payable to the Creditor and her attorney, and a partial relief and satisfaction of judgment. (Sukosd Ex. No. 4 and West Bend Ex. No. 3). Same had been authorized by West Bend's in-house attorney, Rollin Krafft. That letter and the accompanying documents were delivered to one of the Creditor's attorneys, Charles F. Thompson, Jr., who declined to accept the draft and partial release and satisfaction. Later that day, James faxed to Thompson the declaration pages from the West Bend policy. (Sukosd Ex. No. 5). Thereafter, on February 24, 1992, James delivered to Thompson, a certified copy of

the complete subject policy. (Sukosd Ex. No. 6 and West Bend Ex. No. 4). Significantly, during this time period, no discussion of interest owing under the policy occurred among the various attorneys.

The policy provides in Section II—Liability Coverages, in relevant part:

Coverage E—Personal Liability

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

The policy further provides in Section II—Additional Coverages, in part:

We cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

d. interest on the *entire* judgment which accrues after entry of the judgment and before we pay *or* tender, *or* deposit in court that part of the judgment which does not exceed the limit of liability that applies. (emphasis added).

The policy also provides, in part, in Section II—Conditions:

7. Bankruptcy of an Insured. Bankruptcy or insolvency of an insured will not relieve us of our obligations under this policy.

In order to stay post-judgment collection and enforcement proceedings by the Creditor, the Debtors filed their Chapter 11 petition on March 3, 1992. They disclosed the insurance policy proceeds on their schedules as an asset of the estate, and listed the judgment as one of their liabilities.

Some of the parties' attorneys were in contact with each other thereafter on several occasions, but never documented or exchanged written communications on the interest dispute. James and Pheanis testified they verbally offered to Thompson at some uncertain time or times, in late February or early March, to pay whatever was required under the policy to satisfy its terms concerning post-judgment interest. Thompson, on the other hand, testified that the subject of post-judgment interest was not discussed with him by either James or Pheanis until some time in March.

On March 13, 1992, Thompson, by letter to James, again declined to accept the $100,000 draft and accompanying release and satisfaction which had been delivered on February 20, 1992. Instead, he presented a counter-proposal that the draft would be acceptable in exchange for a partial satisfaction of judgment. (Sukosd Ex. No. 13 and West Bend Ex. No. 5). The attorneys, however, did not agree on the appropriate amount of accrued but unpaid interest owing under the terms of the policy. As a result, West Bend filed the instant complaint on April 8, 1992.

In the complaint, West Bend seeks a determination that its liability for post-judgment interest under the policy should be capped at the sum of $4,438.35. It alleges that interest should be calculated on the principal sum of $2,500,000 reflecting the $500,000 in settlement proceeds received from the other co-defendants. In their answer, the Debtors ask that the Court limit any relief granted to West Bend to the determination of its obligation to pay the requisite interest. The Creditor seeks a finding that the actions of West Bend through its attorneys on February 20, 1992, and thereafter, did not constitute a lawful tender of the full limits of West Bend's liability under the indemnity provisions of the policy, and that the injunctive relief requested should be denied.

After some initial non-dispositive motions, on May 15, 1992, the Court allowed West Bend to pay the $100,000 policy principal proceeds into the registry of the Court maintained by the Clerk of the Bankruptcy Court, plus the sum of $67,315.07 as disputed post-judgment interest, pending

trial and determination of the rights of the parties under the policy on the issues at bar. (West Bend Ex. No. 7). Annual interest on a $3,000,000 judgment at nine percent, pursuant to the Ill.Rev.Stat. ch. 110, para. 2–1303 is $270,000 per year, with a per diem figure of $739.72602. Annual interest at nine percent on $2,500,000 is $225,000 with a per diem of $616.44. Thus, the total deposit made by West Bend of $100,000 plus $67,315.07 represents the principal policy limits, plus ninety-one days of post-judgment interest on the $3,000,000 judgment from the date of entry of the judgment, February 14, 1992, through the date of deposit, May 15, 1992. On September 25, 1992, the state court ordered a setoff in the amount of $500,000 against the judgment, effective March 4, 1992, by reason of the settlement with the other parties to that litigation.

### III. ARGUMENTS OF THE PARTIES

West Bend first contends that its written offer of February 20, 1992, as supplemented by a verbal offer made in late February or early March, 1992, to pay whatever the appropriate post-judgment accrued interest, was a valid and sufficient tender. Alternatively, West Bend argues that the filing of the Chapter 11 petition by the Debtors tolled the continuing accrual of its liability for post-judgment interest. Thirdly, at the latest, further interest did not accrue after West Bend instituted and filed the instant adversary proceeding to interplead the policy proceeds for ruling and disposition. West Bend argues that because of the Creditor's separate settlement and receipt of $500,000, that its liability under the terms of the policy should be calculated only on the net judgment after setoff, or the principal sum of $2,500,000. West Bend further contends that the Creditor's attorney's failure to respond to West Bend's tender on February 20, 1992, and thereafter orally supplemented until March 13, 1992, coupled with the Chapter 11 petition filed by the Debtors, constitutes an excuse of further tender.

In contrast, the Creditor contends that none of West Bend's actions have been sufficient to constitute proper and legal tender under applicable Illinois law. Therefore, interest has accrued from the date of the entry of the entire $3,000,000 judgment and so continues. The Creditor maintains that because West Bend continues to dispute the amount of interest it owes on the full judgment, and whether it made a proper tender, that its deposit of said funds is not an unconditional payment or adequate tender, hence its liability for interest continues to daily accrue.

At this point in time, the Debtors make no further claim to the interpleaded policy proceeds as a result of successfully negotiating with the Creditor and other claimants in the core bankruptcy case an amended Chapter 11 reorganization plan which was confirmed, as modified, on November 5, 1992. Under the terms thereof, the Creditor received an assignment of all the Debtors' interests under the insurance policy and its proceeds, as partial satisfaction of the Creditor's claims against the Debtors who were discharged under the terms of the plan, which is now effective and has been substantially consummated.

### IV. DISCUSSION

#### A. THE ILLINOIS "TENDER" CASES

West Bend contends that the conduct of both the Creditor and the Debtors as the insureds excused tender of the policy proceeds. The Debtors filed this bankruptcy case thereby making it impossible for West Bend to tender its policy proceeds after March 3, 1992, and the Creditor failed to indicate a willingness to accept West Bend's policy limits, thus it was impossible for West Bend to pay same directly to them.

West Bend argues two Illinois Appellate Court decisions in support of its position, *Casciola v. Gardner*, 101 Ill.App.3d 852, 57 Ill.Dec. 241, 428 N.E.2d 921 (1st Dist.1981) and *Needy v. Sparks*, 74 Ill.App.3d 914, 30 Ill.Dec. 905, 393 N.E.2d 1252 (1st Dist. 1979). In *Casciola*, the court held that the judgment creditor's rejection of the insurer's offer on behalf of the judgment debtor to pay policy limits, interest on the judgment, and costs, terminated the insurer's

liability for interest on the judgment, notwithstanding that the insurer did not make a formal tender of the funds. Similar to the facts of this case, the question in *Casciola* was whether the insurance company's liability for interest on the judgment terminated on a date certain because formal tender was excused by actions of the parties. *Casciola* held that refusal of counsel for the judgment creditor to accept the offer by the insurance company excused the insurance company from actual physical tender of the amount due. *Casciola* cited *Needy* for the proposition that under certain circumstances a creditor by conduct may excuse further tender.

*Needy*, in turn, quoted from *Gorham v. Farson*, 119 Ill. 425, 10 N.E. 1 (1887):

Where a creditor, in advance of an offer to pay, or in response to such offer, informs the party under obligation to pay that he will not accept the amount actually due in discharge of the indebtedness, the party under obligation to pay is relieved of the duty of tendering the amount actually due.

74 Ill.App.3d at 918, 30 Ill.Dec. at 908, 393 N.E.2d at 1255.

Thus, *Casciola* and *Needy* stand for the proposition that excuse of an obligation of tender exists where it is reasonably clear that it would be a vain, idle or useless act. In both *Casciola* and *Needy*, the court found virtually identical policy provisions; judgments exceeding the policy limits; verbal offers by counsel to pay the policy limits, plus specified interest, and costs in full or partial satisfaction of the judgments; written offers to this effect; rejection of such offers; and garnishment by the judgment creditors. The judgment creditor in *Casciola* argued that *Needy* was distinguishable because the monies offered in *Needy* included a specified and undisputed amount of court costs, whereas in *Casciola* the insurance company only offered to pay "costs of plaintiff," without specifying a definite sum.

The *Casciola* court disagreed and held that the question was not whether the insurer made an insufficient tender, but whether or not actual tender was excused by the conduct of the creditor in response to the offer of payment. Because no tender was actually made in *Casciola*, the insufficiency of tender was not at issue. Rather than promptly submitting to the insurance company an itemized list of the costs claimed, the judgment creditor's counsel had rejected the offer out of hand and initiated garnishment proceedings during a time when the insurance company's offer remained open as partial or full satisfaction of the judgment.

*Needy* noted that the concept of excuse of tender is an established rule of Illinois law. Once tender had been excused, the insurer was not required to actually deposit funds with the court to terminate further liability for accrual of interest. It was undisputed that actual tender was not made. The court rejected the judgment creditor's arguments that the excuse of tender rule was inapplicable, despite the fact that the policy contained no provision for the excuse of tender. The court noted that the lack of a policy provision excusing tender did not deter consideration of the doctrine of excuse of tender.

In contrast, the Creditor's principal authorities are *River Valley Cartage Co. v. Hawkeye–Security Ins. Co.*, 17 Ill.2d 242, 161 N.E.2d 101 (1959) and *Pinkstaff v. Pennsylvania Railroad Co.*, 31 Ill.2d 518, 202 N.E.2d 512 (1964). In *River Valley Cartage*, the insurer had a $50,000 policy and the insured had a $175,000 judgment against him. The policy provided that the insurer was obligated to pay all costs taxed against the insured and all interest accruing after entry of judgment until the insurer paid, tendered or deposited into court such part of the judgment as did not exceed the limit of the insurer's liability thereon. The insurer tendered to the judgment creditor only $50,000. The court held that such tender was not a valid tender and did not operate to terminate the insurer's continuing obligation for interest on the entire $175,000. The court stated that tender was valid only if it was sufficient to cover all that the judgment creditor then has the right to recover, whether of debt, interest or costs. If he tenders less, then

the tender is not good. 17 Ill.2d at 246, 161 N.E.2d at 104.

In *Pinkstaff*, the court found that the judgment debtor had made no requisite tender of payment of judgment, interest and costs that would stop the accrual of interest on the judgment. The judgment debtor had paid into the clerk of the court a certain sum which the judgment creditor refused to accept in satisfaction, claiming that certain deductions were improper and interest had been incorrectly computed. The court noted that in light of the conditions attached to the payment and the provisions of the trial court order, it could not treat a deposit expressly tendered in full satisfaction of all liability as a sufficient partial payment of such liability. Thus, the deposit of a sum less than the amount of the judgment, plus costs and interest on the judgment, was held not to be a legally sufficient tender even if made before final judgment. It is noteworthy that neither *River Valley Cartage* nor *Pinkstaff* discuss the doctrine of excuse of tender relied on by West Bend under *Casciola* and *Needy*.

The Creditor also cites *Knippen v. Glens Falls Ins. Co.*, 564 F.2d 525 (D.C.Cir.1977). The Creditor contends that *Knippen* stands for the proposition that an insurer must unconditionally deposit its funds. Rather, the *Knippen* court held:

> the company must unconditionally surrender control over funds equal to its potential liability in order to satisfy the contractual obligation of "tender." Without actual surrender of control, the company would retain the use of the funds and the ability to draw interest on them. So long as the company is able to earn interest on the funds, it is illogical to interpret the contract to absolve it of the liability to pay this interest over the person who has obtained the judgment.

*Id.* at 530–531; *see also Providence Washington Ins. Co. v. Fireman's Fund Ins. Co.*, 778 P.2d 200 (1989). West Bend unconditionally surrendered control of the interpleaded funds and ceased earning interest on same with the deposit on May 15, 1992.

## B. RULES OF CONSTRUCTION FOR INSURANCE POLICIES

 The Court has also consulted various other authorities on the subject. *See generally,* Appleman, *Insurance Law and Practice* (1967 and 1992 Supp.); 22 Illinois Law and Practice, *Insurance* (1956 and 1992 Supp.). As a general proposition, insurance policies are to be liberally construed in favor of the insured, but where the terms of the policy are clear and unambiguous, the Court's duty is to construe and enforce same as written, and not to alter, rewrite or modify same. *Menke v. Country Mut. Ins. Co.*, 78 Ill.2d 420, 423, 36 Ill.Dec. 698, 700, 401 N.E.2d 539, 541 (1980). The construction of insurance policies presents a question of law to be decided by the Court. *Community State Bank v. Hartford Ins. Co.*, 187 Ill.App.3d 110, 113, 134 Ill.Dec. 810, 812, 542 N.E.2d 1317, 1319 (3d Dist.1989); *Economy Fire & Casualty Co. v. Bassett*, 170 Ill.App.3d 765, 769, 121 Ill.Dec. 481, 483, 525 N.E.2d 539, 541 (5th Dist.1988); *see also Transamerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir.1992). All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret and to determine whether any ambiguity exists. *United States Fire Ins. Co. v. Schnackenberg*, 88 Ill.2d 1, 5, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981). Policy language should be given its plain and ordinary meaning. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 193 Ill.App.3d 1087, 140 Ill.Dec. 907, 550 N.E.2d 1032 (1st Dist.1989), *aff'd*, 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926 (1991). Ambiguity should not be created where none exists. *Economy Fire*, 170 Ill.App.3d at 769, 121 Ill.Dec. at 483, 525 N.E.2d at 541; *see also, Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 638 (7th Cir.1991). Courts should endeavor to construe a policy so as to permit the maximum recovery possible under a reasonable view of its terms. *Provident Sav. Life Assur. Soc. v. Cannon*, 103 Ill. App. 534 (1902), *aff'd*, 201 Ill. 260, 66 N.E. 388 (1902); *Illinois State Trust Co v. Employees Life Co.*, 8 Ill.App.2d 455, 131

N.E.2d 789 (4th Dist.1956). All doubts and ambiguities must be resolved in favor of the insured. *Economy Fire*, 170 Ill.App.3d at 769, 121 Ill.Dec. at 483, 525 N.E.2d at 541; *Northbrook Excess*, 924 F.2d at 638 ("[i]nsurance contracts are construed strictly in favor of the insured because, usually, the insurer wrote the policy terms").

## C. THE FACTS OF THIS CASE APPLIED TO THE POLICY TERMS AT BAR

■ After review of the foregoing authorities, the Court finds that West Bend's tender on February 20, 1992 was insufficient. Pheanis' letter dated February 20, 1992 enclosed a draft for only the $100,000 principal policy limits, along with a partial release and satisfaction of judgment, and a receipt. That offer did not include any provision for the accrued and accruing post-judgment interest on the judgment. Although West Bend's attorneys thereafter subsequently obtained the policy declaration pages, and on February 24, 1992, furnished a certified copy of the policy to Thompson, James's subsequent letter of February 24, 1992, only transmitted the policy with a request and query as to what else was needed to resolve the matter, and a request for advice when Thompson would accept delivery of the proceeds of the policy principal delivered on February 20, 1992. Again on February 24, 1992, no reference or tender was made in the correspondence on the interest question. It is not clear exactly when James, Pheanis or any other agent on behalf of West Bend made an oral offer to pay any rate or amount of interest called for under the policy provisions.

James admitted on cross examination that he had made no offer to satisfy any interest liability of West Bend in his communications with Thompson on February 20, 1992. He admitted that later in the week of February 24, 1992, he first learned of the interest provisions in the policy which he and Pheanis discussed. Although James did not know the answer nor purport to do the computation on the appropriate amount of interest, he did recall speaking with Thompson in early March advising that West Bend would pay whatever it had to pay in response to a telephone call from Thompson. James could not give a specific day when he made that oral offer.

■ On or about February 24, 1992, Pheanis became aware of the policy provisions on interest, and received authority from Rollin Krafft, in-house counsel for West Bend, to tender and pay whatever it took, which he so directed to James to communicate to Thompson. Pheanis recalled having a conversation with Thompson early in March communicating same. This is likewise insufficient tender, and Thompson then took no action which would excuse further tender. In response, Pheanis ultimately received Thompson's letter of March 13, 1992. That letter did not reject the prior insufficient tenders, but merely counter-offered terms for a partial resolution which were unsatisfactory to West Bend, resulting in the filing of this adversary proceeding.

■ The Court finds that interest continued to accrue on the entire $3,000,000 judgment until West Bend deposited the funds on May 15, 1992. The Court rejects the Creditor's argument that interest still continues to accrue because the deposit was not unconditional. The policy terms, which ultimately control, provide three alternative ways to satisfy West Bend's liability for post-judgment interest on the entire judgment: payment (in full to the Debtors or the Creditor); or tender; or deposit in court. Payment in full to any party has not yet occurred. Neither the Debtors as insureds nor the Creditor as assignee thereof have yet received the money. West Bend's tenders were inadequate and incomplete. However, it finally paid the maximum principal and interest into the registry of this Court on May 15, 1992. That payment is sufficient under the plain meaning of the policy language. At that point, the prior inadequacy of tender was effectively mooted out.

Pursuant to the policy terms, West Bend did make a deposit of all principal and then accrued interest with the Court. No provision in the policy places a restriction on said deposit or eliminates West Bend's

rights to seek a declaration of its rights and duties. The Court rejects West Bend's argument that under the subject policy terms the prior actions by James and Pheanis constituted valid tenders or that Thompson's actions excused any further tender. The offer to pay "whatever it took" to satisfy the claim, coupled with a release and satisfaction did not constitute a valid tender because there was no evidence of a specific amount of interest West Bend would be willing to pay at any definite point in time.

 In addition, the Court rejects West Bend's argument that the filing of the bankruptcy case tolled the accrual of post-judgment interest or that the subsequent setoff ordered by the state court after the deposit was made reduces the principal amount on which interest accrues. While it is true that upon the filing of the bankruptcy case the policy became an asset of the estate, *In re Rusty Jones, Inc.*, 128 B.R. 1001, 1006 (Bankr.N.D.Ill.1991), the policy specifically states that bankruptcy or insolvency will not relieve West Bend of its obligations. Interest accrues on the entire judgment, which was not reduced by the setoff which was only ordered after the deposit was made. West Bend could have differently drafted its policy terms to contain provisos or exceptions to relieve it from accrual of interest post-bankruptcy petition or net after subsequently ordered setoffs. It did not, and must pay accordingly. Hence, the filing of the bankruptcy case did not toll the post-judgment interest nor excuse West Bend from immediately tendering or interpleading the insurance policy proceeds and the interest due and owing. Instead, West Bend waited over a month to file the complaint, and took over another month for the payment to be made into the Court. The actual payment is the event which tolled further liability for interest.

Consequently, the Court finds that under the policy terms post-judgment interest at the rate of nine percent per annum on the entire $3,000,000 judgment accrued beginning February 14, 1992, until May 15, 1992. Thus, the sum of $67,315.07, plus interest

earned thereon is due and owing the Creditor, less the appropriate sum of court costs assessable against the earnings of same pursuant to 28 U.S.C. § 1930(b) and 56 Fed.Reg. 56356 (1991).

### D. FEDERAL RULE OF CIVIL PROCEDURE 65

 Federal Rule of Civil Procedure 65, incorporated by reference in Federal Rule of Bankruptcy Procedure 7065 authorizes the Court to grant injunctive relief where appropriate, unlike the congressionally mandated injunctive relief of the automatic stay provision of 11 U.S.C. § 362, applicable upon the mere filing of a bankruptcy petition. Court ordered injunctive relief, however, is an extraordinary and exceptional remedy, and should be discretely ordered. A plaintiff seeking an injunction under an adversary proceeding commenced pursuant to Federal Rule of Bankruptcy Procedure 7001(7), as in other federal litigation, bears the burden of establishing five requisite elements:

1) an inadequate remedy at law;
2) the plaintiff will suffer irreparable harm if the preliminary injunction is not issued;
3) the resultant harm if the preliminary injunction is not granted outweighs the harm the defendant will suffer if the injunction is granted;
4) a reasonable likelihood of prevailing on the merits; and
5) the injunction will not harm the public interest.

*See Kellas v. Lane*, 923 F.2d 492, 493 (7th Cir.1990); *Ping v. National Education Asso.*, 870 F.2d 1369, 1371 (7th Cir.1989); *Baja Contractors, Inc. v. Chicago*, 830 F.2d 667, 675 (7th Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988); *Manbourne, Inc. v. Conrad*, 796 F.2d 884, 887 (7th Cir.1986); *Brunswick Corp. v. Jones*, 784 F.2d 271, 273–274 (7th Cir.1986); *American Hospital Supply Corp. v. Hospital Products, Ltd.*, 780 F.2d 589, 593–594 (7th Cir.1986). The standards for granting a permanent injunction are substantially similar to the standards for preliminary injunctions. *Kashani v. Pur-*

*due University,* 763 F.Supp. 995, 997 (N.D.Ind.1991), *cert. denied,* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987) (citing *Chicago & North Western Transp. Co. v. Railway Labor Executives' Asso.,* 908 F.2d 144 (7th Cir.1990)).

■ As a threshold matter, a party seeking an injunction must establish: 1) no adequate remedy at law; 2) some likelihood of success on the merits; and 3) a danger of irreparable harm. Once these elements have been demonstrated, the trial court must "somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest' (citations omitted)." *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433 (7th Cir.1986).

The Court, sitting as would a chancellor in equity, then weighs all factors in deciding whether to grant the injunction, seeking at all times to "minimize the costs of being mistaken." *American Hospital Supply,* 780 F.2d at 593. This process is referred to as the "sliding scale" approach, which is properly characterized as subjective and intuitive, and one which permits courts to "weigh the competing considerations and mold appropriate relief." *Lawson,* 782 F.2d at 1436.

With respect to the fourth element, a reasonable likelihood of prevailing on the merits, the Seventh Circuit has established the minimum threshold, namely that "plaintiff's chances are better than negligible." *Brunswick,* 784 F.2d at 271 (citing *Omega Satellite Products Co. v. Indianapolis,* 694 F.2d 119, 123 (7th Cir.1982)); *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 387 (7th Cir.1984); *A.J. Canfield Co. v. Vess Beverages, Inc.,* 796 F.2d 903, 906 (7th Cir.1986).

The balancing test regarding the fourth element was discussed in *Roland*:

> If the plaintiff does show some likelihood of success, the court must then determine how likely that success is, because this affects the balance of relative harms.... The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor. This is a most important principle, and one well supported by cases in this and other circuits, and by scholarly commentary. (citations omitted).

*Roland,* 749 F.2d at 387; *see also Lawson,* 782 F.2d at 1433.

■ The Court hereby denies the injunctive relief sought by West Bend as it has failed to plead or prove grounds for relief pursuant to Rule 65. West Bend has made no showing of any real need for the extraordinary equitable relief of a judicial injunction. West Bend does not lack an adequate remedy at law. It has interpleaded the money and the Court has determined the issues on the interest dispute, and ruled on the declaratory judgment relief requested. There is no claimed duty owed by either the Debtors or the Creditor to West Bend which was violated. Moreover, the other requirements for injunctive relief have not been met. There will be no hardship suffered by either side if no injunction issues. Furthermore, there are no public policy questions. Accordingly, the injunctive relief requested is denied.

## V. CONCLUSION

For the foregoing reasons, the Court hereby denies the injunctive relief sought and finds that West Bend never made a valid tender of the insurance policy proceeds. When West Bend deposited the policy principal proceeds, plus the sum of $67,315.07 for the disputed post-judgment interest on May 15, 1992, that payment tolled any further accrual of interest. West Bend is liable to the Creditor for $100,000 policy principal plus post-judgment interest on the entire $3,000,000 judgment from February 14, 1992 to May 15, 1992 at nine percent per annum or $67,315.07, plus interest earned thereon, less the appropriate amount of court costs assessable against the earnings pursuant to 28 U.S.C. § 1930(b) and 56 Fed.Reg. 56356 (1991). The Clerk of the Bankruptcy Court is ordered to so pay out said sum forthwith.

This Opinion serves as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.